WALTER SCOTT *vs.* CHARLES R. SPIEGEL, SHERIFF.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

In the procedure authorized by chapter 326 of the Public Acts of 1895 in
proceedings on *habeas corpus* where a mittimus signed by a justice of
the peace is made part of the return, the regular rules of pleading, so
far as applicable, must be observed. Accordingly the petitioner cannot
deny the truth of the facts alleged in the return, and at the same time
demur or otherwise question their legal sufficiency.
A justice of the peace may, within a reasonable time after a lawful convic-
tion and sentence, issue a mittimus to carry into effect the judgment,
even though his court has then been adjourned without day.
It is not within the power of the Supreme Court of Errors to revise or
change questions of pure fact found by the trial court from the evidence.

[Submitted on briefs January 30th—decided February 21st, 1896.]

PETITION for a writ of *habeas corpus*, brought to the Supe-
rior Court at Waterbury in New Haven County, and tried by
the court, *George W. Wheeler, J.*, upon the petitioner's reply to
the respondent's return; facts found and judgment rendered
for the respondent, and appeal by the petitioner for alleged
errors in the rulings of the court. *No error.*

The plaintiff made an application to the Superior Court in
New Haven County, alleging that he was unlawfully detained
and imprisoned in the common jail by the defendant, who is
the sheriff of that county and the keeper of the jail; and
prayed for a writ of *habeas corpus*. The court issued the
writ. The defendant thereupon produced the plaintiff in
court, and assigned in his return upon the writ as the reason
for his holding the plaintiff in custody, two mittimuses
issued by a justice of the peace in said county, by virtue of
which the plaintiff had been committed to said jail. To this
return the plaintiff made answer as follows:—

" 1. On the 9th day of November, 1895, the said Walter
Scott was arrested upon two warrants signed by Henry
Beadle, Esq., justice of the peace, residing in the town of
Cheshire, Connecticut, upon two complaints dated Novem-

ber 8th, 1895, and signed by Charles H. Sawyer, prosecuting
agent for New Haven County, in which complaints it was
alleged that the said Walter Scott did keep a place in which
it was reputed that spirituous and intoxicating liquors had
been sold and were kept for sale and exchange, without hav-
ing been duly licensed therefor; and that said Walter
Scott did sell and exchange spirituous and intoxicating
liquors without having a license therefor; and that said
Walter Scott did keep certain spirituous and intoxicating
liquors with intent to sell the same without having a license
therefor.    Said Scott was arrested by one Shadrack McClair,
an agent of the Law and Order League of Connecticut, and
immediately brought before Henry Beadle, Esq., justice of
the peace, residing in said town of Cheshire.

" 2. Said justice of the peace immediately proceeded to
the trial of said cases, and found said Scott guilty in each
case, in manner and form as alleged in said complaints, and
thereupon ordered that said Walter Scott pay a fine of seventy-
five ($75) dollars and costs on one complaint, and one hun-
dred ($100) dollars and costs on the other complaint, and
that he stand committed until judgment be complied with.

" 3. Immediately thereupon the said Walter Scott prom-
ised and agreed with the said justice of the peace that he
would pay the total amount of said fines and costs to the
said justice of the peace on or before the 18th day of Novem-
ber, 1895.

" 4. After said justice court had rendered judgment and
pronounced sentence and the said Scott had made the prom-
ise and agreement aforesaid, said court issued no mittimus
and took no further action in either of said cases, but imme-
diately adjourned sine die.

" 5. Said Scott did not give any bonds, and was never
ordered to give bonds for his appearance, in either of said
cases at any time in the proceedings, or either of them.
Said Scott was not remanded into the custody of any officer
at the time of said adjournment, and did not move for an
appeal in either of said cases.    Immediately upon said ad-
journment the said justice of the peace and the said Sha-

drack McClair permitted the said Walter Scott to depart from the place in which said court had been held, and the said justice, and the said McClair and said Scott, each went about his usual business.

" 6. On the 18th day of November, 1895, before two o'clock in the afternoon, the said justice of the peace prepared and issued two mittimuses referred to in the return, and placed the same in the hands of Joseph R. Warren, a deputy sheriff for New Haven County, and thereupon said deputy sheriff, on the 19th day of November, 1895, arrested the said Walter Scott, and committed him to the jail in New Haven.

" 7. The said Walter Scott is a hotel keeper, residing in the town of Cheshire, and during all the time between the 9th and 19th days of November, aforesaid, was publicly attending to his business in said town, and frequently saw and met said justice of the peace and the said Shadrack Mc-Clair, but he was permitted to go free, and at no time was placed under arrest or restraint of any kind, until he was arrested upon the mittimuses aforesaid."

To this answer the defendant rejoined in this way : " The respondent denies paragraphs 3, 4, 5, and 7 of the reply to the return, and says said reply is insufficient."

The court found the issue for the defendant, and rendered judgment that the writ be denied; from which judgment the plaintiff has appealed to this court. The trial court thereupon made a finding of facts, the material parts of which are as follows :—

" 1. On the 9th day of November, 1895, the petitioner, Walter Scott, was duly convicted in a justice court of certain crimes, as more fully appears in the judgment files in said cases, and sentenced to pay two fines, viz : one of $75 and costs, and one of $100 and costs, and that he stand committed until judgment be complied with.   2. It is admitted that the jurisdiction of the justice was complete, that all the proceeding to and including the sentences were regular, and the sentences lawful.   3. After the sentences had been pronounced, Scott said to the justice that he had not the money to pay the judgments, but thought he could borrow it.   The

justice told him he could pay the fines and costs in ten days, and in the meantime be placed in the custody of some one. 4. Immediately thereupon Scott, by permission of the justice, left the court room to find some one to go security for him. He returned in a few minutes with one Keeler; thereupon the justice placed Scott in Keeler's hands, saying that Keeler must have Scott present on the 18th of November, 1895, and he would hold Keeler responsible for the appearance of Scott on the said day, if the fines and costs were not paid before. 5. Scott said he would pay said fines and costs within the time fixed by the justice. 6. After the justice had spoken as before detailed to Keeler, Scott left the justice court and went about his usual vocations, meeting the said justice and the officer who arrested him in said cases, at various times before the 18th of November. During all of said time he was permitted to go free without restraint of any kind, until detained upon the mittimuses hereinafter referred to. 7. The said justice issued no mittimuses until the 18th of November, and took no further action in said cases until said day. 8. Scott gave no bonds for his appearance in either of said cases, and was not required to give bond, and was not remanded into the custody of any officer at any time, and did not move for an appeal in either of said cases. 9. On November 18th, 1895, before two o'clock in the afternoon, the said justice issued two mittimuses, as set forth in the return herein, and placed the same in the hands of Joseph R. Warren, a deputy sheriff for New Haven County, and thereupon said Warren arrested said Scott and committed him to the county jail at New Haven. 10. Scott thereupon brought his petition for a writ of *habeas corpus*, which writ was duly issued and the parties thereto duly heard upon the pleadings as on file. 11. The petitioner claimed upon argument: (*a*) That the said mittimuses were defective, (1) in not setting up the record of his conviction, (2) in not setting up the place of his conviction; (3) in not setting up any facts to show that the offenses were committed in New Haven County. (*b*) That one of the mittimuses did not set forth any cause of action, and was void. (*c*) That the justice had accepted

Scott's promise to pay, in full satisfaction of the sentences imposed, and therefore the sentences had been performed. (*d*) That the justice had no power to commit Scott after his court had adjourned *sine die* and Scott had been permitted to go at large.    (*e*) That Scott having been permitted to go at large, such permission operated as a discharge, and therefore he. could not be subsequently recommitted.    12. I find as a fact that the justice did not accept Scott's promise to pay, in satisfaction of the sentences imposed by him.    13. I find as a fact that Scott did not promise the justice to pay said penalties in case he was allowed to go at large for ten days, or any other time.    14. The judgment files were offered in evidence by the petitioner, and were in all particulars conceded to be regular."

The plaintiff assigned as reasons of appeal the following : " The court erred and mistook the law in the following particulars: 1. In ruling that the plaintiff had waived his right to attack the mittimuses set up in the return, because he had not specially pleaded the defects therein.    2. In not ruling that both the mittimuses set up in the return were void. 3. In holding that if the mittimuses were defective the court, having before it the record of conviction, regular and lawful, had authority to remand the plaintiff until opportunity had been had to recommit him in proper form.    4. In holding that if the mittimuses were void the court ought not to release the prisoner, but should remand him, when his conviction was legal, and his sentence had not been performed. 5. In holding that the arrangement between the plaintiff and the justice in regard to the payment of the fine and costs, and the plaintiff's release thereupon, did not operate to discharge the plaintiff from liability to committment under his sentence.    6. In holding that the justice, after this arrangement had been made, had authority to issue these mittimuses before the time which he had agreed upon with the plaintiff in which the plaintiff might pay his fines, had expired. 7. In holding that the justice had any power to issue these mittimuses ten days after he had adjourned his court *sine die*, and had permitted the plaintiff to go at large in the manner

described in the finding.   8. In holding that the justice had
any power to place Scott 'in Keeler's hands,' or that the ar-
rangement with Keeler could be anything but an obligation
by him to pay the plaintiff's fines and costs, if the plaintiff
failed to do so within the time fixed.

"The court erred and mistook the facts in the particulars
described in the plaintiff's exceptions, viz : 1. In finding that
it was admitted that the proceedings set out in the judgment
files were regular.   2. In finding that the justice placed the
plaintiff 'in Keeler's hands,' and held him responsible for the
plaintiff's appearance before the justice on the 18th of Novem-
ber, 1895.   3. In finding that the justice did not accept the
plaintiff's offer to pay his fines within a time fixed, as a satis-
faction of his sentences.   4. In finding that Scott did not
make the promise so to do within a time fixed, in case he
was allowed to go at large.   He therefore prays for such
relief as is provided by law in the premises."

*Lucien F. Burpee* and *Cornelius J. Danaher*, for the ap-
pellant (petitioner).

It was not necessary to file a special plea setting up the
defects apparent on the face of the mittimuses.  1 Bac.
Abr., tit. Bail, 589 ; 4 T. R., 757 ; 4 Burr., 2539 ; 1 Haw.
P. C., Chap. 19 ; Spelling on Ex. Rel., §§ 1152, 1317 ; *State
v. Blaisdell*, 57 N. W. Rep. (Minn.), 206, 794 ; *In re Bion*,
59 Conn., 372.   Where a return is not traversed, it is to be
treated as if demurred to by the relator.   *In re Wilburn*, 59
Wis., 25 ; Wharton on Cr. Pr. and Pl., § 991 ; Church on
Habeas Corpus, § 166 ff.   A demurrer to the petition or
return, although sometimes allowed, is not a proper method
of testing the sufficiency.   *Cunningham* v. *Thomas*, 35 Ind.,
171 ; *Hovey* v. *Morris*, 7 Blackf., 559 ; *In re Douglas*, 3 Ad.
& Ell., Q. B., 825.   In this State pleadings in the usual
form are not required in *habeas corpus*.   General Statutes,
§ 905.   Chapter 326 of the Public Acts of 1895 makes no
provision for any pleading to test the sufficiency of a return
which is defective on its face.   The mittimuses were void.
The one marked No. 2 is found by the court below to be

fatally defective. It does not recite the commission of any offense known to the law. 2 Swift's Dig., 568; Gen. Stat., § 3392; 1 Shar. Bl., § 137. The objection raised to the mittimus marked No. 1, was that it did not state where or when either of the offenses alleged was committed, and therefore it did not appear that the justice who tried these cases had jurisdiction, or that the New Haven jail was the proper place of confinement, or that the keeper of said jail was the proper legal custodian of the offender. General Statutes, §§ 687, 1692, 3358; *In re Brainerd*, 56 Vt., 495, 496; Hurd on Habeas Corpus, 332; 2 Swift's Digest, 794; Conn. Civil Officer, 230, 249. Such defects cannot be deemed mere irregularities. Bacon's Abr., Habeas Corpus, § 10; *Ex parte Burford*, 3 Cranch, 448; Alderson on Judicial Writs, 607, 608, 610; 1 Bl. Com., 337; 4 id., 256; *In the matter of Hayward*, 1 Sandf. (3 N. Y. Supr. Ct.), 701; *In the matter of Fetter*, 23 N. J. Law, 311; *Ex parte Zeehandelaur*, 71 Cal., 238; *Adams* v. *Vose*, 1 Gray, 59. Restraint upon process that is void is not better than restraint without process. *Barney* v. *Barker*, 56 Vt., 14; *In re Brainerd*, 56 id., 495; *In re McLaughlin*, 58 id., 136; *Ex parte Garvey*, 7 Colo., 384. Whatever facts are necessary to justify the detention, must be set forth in the return. *In re Brainerd*, 56 Vt., 495; *Yates' Case*, 44 Johns., 317; *In re Mowry*, 12 Wis., 52; *Randall* v. *Bridge*, 2 Mass., 549. The arrangement between the petitioner and the justice satisfied the sentences. A transaction of that kind was sustained in *Stonington* v. *Powers*, 37 Conn., 439. How is the delay of ten days which was granted to the petitioner to be regarded? There certainly was not a suspension of sentence; sentence was passed promptly after trial. There was, in the opinion of the Superior Court, a suspension of the execution of sentence. That court regarded it as definite in time, and therefore within the discretion of the justice. But, having legally suspended the execution of sentence for a definite time, the court had no power to issue its mittimus before the time of suspension had expired. On a similar state of facts, CHIEF JUSTICE HINMAN discharged the petitioner in two writs of

*habeas corpus.* The cases were appealed to this court, and appear in the printed record for the September term, 1867. *In re George W. Rogers.* See also *People* v. *Allen*, 53 Ill., 61 ; *Weaver* v. *People*, 33 Mich., 395 ; *People* v. *Felker*, 61 id., 110 ; *Ex parte Kearney*, 55 Cal., 212 ; *In re Webb*, 89 Wis., 354 ; *McLaughlin* v. *Etchison*, 127 Ind., 476. The cases of *People* v. *Baker*, 89 N. Y., 461, and *Gano* v. *Hall*, 42 id., 67, are based upon facts radically different, and ought to have little weight in this case.

*E. P. Arvine* and *Charles H. Sawyer*, for the appellee (respondent).

The plaintiff waived the defects of the mittimuses, if there were any. . It is absurd to say that the record must be set out in the warrant of commitment. If the mittimus states the nature of the offense of which the prisoner is convicted, and it appears that he was convicted by a magistrate or court, the cause of commitment is sufficiently declared. It will be presumed that the court had jurisdiction, and that it was held at the proper place. The form universally used in this State is that of the mittimuses before the court. 2 Sw. Dig., 794. The defects complained of are at most mere irregularities, for which a writ of *habeas corpus* cannot be sustained. *Ex parte Gardner Tracey*, 25 Vt., 93; *In re Blair*, 4 Wis., 521; *Petition of Crandall*, 34 id., 177. A *habeas corpus* cannot take the place of a writ of error. *In re Bion*, 59 Conn., 391; *Sennott's Case*, 146 Mass., 493 ; *Ex parte Shaw*, 7 Ohio St., 81. Even if the warrants of commitment were void, the court should not discharge the prisoner, if the judgments on which they were issued were valid. *People* v. *Baker*, 89 N. Y., 465; *Sennott's Case*, 146 Mass., 469; 9 Amer. & Eng. Ency. of Law, 203; Spelling, Ex. Rem., § 1217, note 1, and cases there cited; *Schwabler* v. *The Sheriff*, 22 Pa., 18, 19; *Ex parte Gibson*, 31 Cal., 619. Even if the justice had agreed to accept the prisoner's promise to pay as payment, he had no authority to do so, and his action could not be binding on either the State or the town. *Gano* v. *Hall*, 42 N. Y., 70. The case of *Stonington* v. *Powers*, 37 Conn., 429,

is clearly distinguishable, and does not go to the extent of petitioner's claim. The petitioner is equitably estopped from complaining of the action of the court, which he himself requested. *McLaughlin* v. *Etcheson*, 127 Ind., 474. The mittimus is of the nature of an execution, and may be issued at any time. 12 Amer. & Eng. Ency. of Law, 412; *In re Shaw*, 31 Minn., 44; *McLaughlin* v. *Etcheson*, *supra*; *Gano* v. *Hall*, *supra*; *Clark* v. *Cleveland*, 6 Hill, 344; *Arnold* v. *Steeves*, 10 Wend., 515; 2 Sw. Dig., 416; *People* v. *Allen*, 115 Ill., 63; Abbott's Trial Brief, Criminal Cases, § 861; *Conly* v. *Anderson*, 112 Mass., 60; *Young* v. *Makepeace*, 103 id., 54; *Taylor* v. *Taylor*, 36 Conn., 252; *People* v. *Son*, 12 Wend., 344; *Schuamble* v. *The Sheriff*, 10 Harris (Pa.), 18.

ANDREWS, C. J. The Superior Court made certain findings of fact, to which exception is made by the plaintiff. The evidence upon which these findings were made, is certified up in the record. As these were questions of pure fact depending upon the consideration of evidence, we do not understand it is within our power to revise or change them. If, however, it was open to this court to do so, we should be of opinion that the evidence was sufficient to support the conclusions.

We agree with the Superior Court, that the only questions properly in the case were such as were presented by the plaintiff's answer to the defendant's return. In the first volume of Swift's Digest, side page 569, it is stated that in cases of *habeas corpus*, by the common law, the "truth of the return cannot be contested, and there is no remedy for the party aggrieved, but an action on the case for the false return, or by information, or indictment in the name of the public." To the same effect are the authorities cited by the plaintiff on this part of his brief. And Swift's Digest at the page above noted, adds : " As the remedy by the common law is very imperfect, it has been supplied in this State by statute." In 1815 the legislature of this State had provided for pleadings and procedure in cases of *habeas corpus*, by an enactment, one section of which has been continued

without change in every Revision to this time. It is now
§ 1271 of the Revision of 1888. That section declares that:
" When any statements contained in such a return shall be
contested, such court or judge may hear testimony, and
examine and decide upon the truth, as well as the sufficiency
of the return, and render such judgment as to the law and
justice shall appertain." Since that statute, it has been
permissible in cases of *habeas corpus* for the applicant to
demur to the return, to deny it, or to confess and avoid its
effect by setting up other facts. A writ of this kind could
not, of course, be made to perform the office of a writ of
error. Since the passage of that statute, the parties to these
writs have been accustomed, whenever they saw fit to do so,
to use the liberty of pleading indicated by the quoted sec-
tion. *Hill* v. *Goodrich*, 32 Conn., 588; *Macready* v. *Wilcox*,
33 id., 321; *In re Bion*, 59 id., 372; *Yudkin* v. *Gates*, 60
id., 426; *Whalen* v. *Olmstead*, 61 id., 263. Whatever doubt
there was, if any, as to the propriety of such procedure in
cases of *habeas corpus*, must now be removed by the Act of
1895, Chap. 326, p. 667, which expressly provides for any
kind of pleadings in any case where a mittimus signed by a
justice of the peace is made part of the return. And when
pleadings are allowed, the rules which govern pleadings, so
far as they are applicable, must be observed, and the effect
of the pleadings on the question upon which the court is to
decide, must be held to have its full force. One of these
rules is such that a demurrer to the return and an answer
raising an issue of fact, cannot be pending at the same time.
*Hoadley* v. *Smith*, 36 Conn., 371, 372; *Hotchkiss* v. *Hoy*, 41
id., 568; *Brainard* v. *Staub*, 61 id., 570. Another is, that
the plaintiff, having presented an issue of fact upon the
return, cannot raise any question as to its legal sufficiency.
*Adams* v. *Way*, 32 Conn., 160; *Morehouse* v. *Northrop*, 33
id., 380, 387; *Hoadley* v. *Smith, supra; Healey* v. *New Haven*,
49 id., 394.

Applying these rules to this case, and regarding the ques-
tions of fact as settled, the only remaining question presented
by the return is whether or not the justice of the peace had

power to issue the mittimuses ten days after the plaintiff had been sentenced; the justice court at which he had been convicted having meantime been adjourned without day. It is found that all the proceedings before the justice up to and including the sentences, were regular and lawful. So that the question is: Did such delay operate to deprive the justice of power to issue the mittimuses? Stated in another way the question might be: Did that delay operate to exempt the plaintiff from being compelled to comply with these lawful sentences which had been pronounced against him?

" A justice of the peace is a judicial and ministerial officer. He performs judicial duty in the trial of causes, and ministerial duty in recording his judgments. He is both judge and clerk of his courts. His duties as recording officer are similar in every respect to those performed by clerks of the higher courts. The only difference in the cases consists in the sources of knowledge that they have of the judgments that have been rendered which they are required to record. . . . . But differences in the sources of knowledge, in this respect, make no difference in the character of the duties they perform." *Smith* v. *Moore*, 38 Conn., 105, 109. It is very likely true, that when the justice court was adjourned without day the judicial officer could no longer act. But the ministerial officer remained, and might do any act which such an officer could lawfully do. As clerk of his own court this justice of the peace had powers entirely analogous to the powers which the clerks of the higher courts have. A mittimus after conviction is, in criminal cases, similar to an execution after judgment in a civil case. It is final process. It is the carrying into effect the judgment of the court. The clerk of the Superior Court has power to issue a mittimus after the term of court has adjourned, to carry into effect an order made by the court while in session. *Taintor* v. *Taylor*, 36 Conn., 242. A clerk of the Superior Court can issue an execution in a civil suit at any time while the judgment remains unsatisfied. A justice of the peace may in like manner, as the clerk of his own court, issue an execution on any judgment which he has rendered, or an *alias* or *pluries* execu-

tion, at any time so long as the judgment remains in force and he continues in office. In respect to the power of a court to issue a mittimus at a date subsequent to the sentence, Swift's Digest, vol. 2, side page 416, says: "So where the defendant is present when the verdict or judgment is rendered against him, though the court should not order him into custody, and he is suffered to go at large, yet they may at any time afterwards issue a warrant to commit him for the non-payment of the fine and costs; for the defendant is taken into or retained in custody solely for the purpose of enforcing the payment of the fine and costs. When that is not necessary the court may at discretion permit him to go at large, and can then as well issue a warrant against him for the fine and costs as if he were in actual custody." This language is intended doubtless to apply to the higher criminal courts. Whether the same rule would apply to a justice court to the same extent, we need not decide. But we have no doubt that a justice of the peace may, within any reasonable time after conviction and sentence, issue a mittimus to carry into effect his judgment, even though his court has been adjourned without day; *Taintor* v. *Taylor, supra; Gano* v. *Hall,* 42 N. Y., 67; 12 *Amer. & Eng. Ency. of Law,* 42; and that the time here allowed was not unreasonable.

It should be added that if the mittimuses in the case are in fact defective in form—as the conviction and sentences in the case were regular and lawful—they may, and should, be amended by the justice so as to be made faultless.

There is no error.

In this opinion the other judges concurred.