RICHARD T. CARPENTER *v.* LARRY R. MEACHUM,
COMMISSIONER OF CORRECTION
(14595)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued January 5—decision released March 18, 1994*

*John R. Williams,* for the plaintiff in error.

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Christopher Alexy,* assistant state's attorney, for the defendant in error.

PETERS, C. J. In this companion case to *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994), the dispositive issue is the constitutionality of General Stat-

---

* March 18, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

utes § 52-273[1] insofar as that statute deprives this court
of subject matter jurisdiction over a writ of error
brought to review the denial of a petition of habeas
corpus after the habeas court has denied certification
to appeal. We conclude that the statute passes constitu-
tional muster and that the writ of error must, there-
fore, be dismissed.

The plaintiff in error, Richard T. Carpenter (plain-
tiff), filed a revised petition for a writ of habeas corpus
to challenge the legality of his detention by the defend-
ant in error, Larry R. Meachum, commissioner of cor-
rection (state), pursuant to his 1990 conviction of the
crime of manslaughter in the first degree.[2] He alleged
that he had been denied his constitutional right to effec-
tive assistance of trial counsel as guaranteed by the
sixth and fourteenth amendments to the United States
constitution.[3] After an evidentiary hearing, the habeas
court denied the petition, concluding that the plaintiff

[1] General Statutes § 52-273 provides: "WRIT OF ERROR; LIMITATIONS. No
writ of error may be brought in any civil or criminal proceeding, unless
allowed and signed within two weeks after the rendition of the judgment
or decree complained of. No writ of error may be brought in any civil or
criminal proceeding for the correction of any error which might have been
reviewed by process of appeal."

[2] The plaintiff was convicted of the crime of murder in violation of Gen-
eral Statutes § 53a-54a in connection with the death of a young child as
a result of head trauma and a skull fracture. On direct appeal, this court
set aside the murder conviction because of a lack of sufficient evidence to
establish the plaintiff's intent to kill. We concluded that the plaintiff was
guilty of the lesser included crime of manslaughter in the first degree in
violation of General Statutes § 53a-55 (a) (3). *State* v. *Carpenter*, 214 Conn.
77, 570 A.2d 203 (1990). On a second direct appeal, this court upheld the
trial court's judgment resentencing the plaintiff to a term of imprisonment
of twenty years. *State* v. *Carpenter*, 220 Conn. 169, 595 A.2d 881 (1991),
cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 181 (1992).

[3] The plaintiff claimed that he had not received the minimal level of com-
petent representation necessary to comply with federal constitutional law
because his trial counsel had allegedly failed: (1) to conduct a proper pre-
trial investigation; (2) to seek by motion the disclosure of records in the
possession of other state agencies that would have substantially aided his
defense; and (3) to request jury instructions on lesser included offenses.

had failed to prove either that his trial counsel had rendered ineffective assistance, or that, even if the representation had been ineffective, it was probable that, but for that ineffectiveness, a different result would have been realized. *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984). The habeas court thereafter denied the plaintiff's petition for certification to appeal. Without attempting to challenge the validity of this denial, the plaintiff then filed a writ of error in this court.

Pursuant to his writ of error, the plaintiff contends that the judgment of the habeas court should be set aside because that court improperly excluded relevant evidence and improperly rejected his claim of ineffective assistance of counsel. While countering these contentions on their merits, the state also maintains that, for two reasons, both grounded in § 52-273, we lack subject matter jurisdiction over the writ of error in this case. First, the state contends that the plaintiff may not bring a writ of error because, under the second sentence of § 52-273, "[n]o writ of error may be brought in any civil or criminal proceeding for the correction of any error which might have been reviewed by process of appeal." Second, the state contends that the writ of error must be dismissed as untimely because, contrary to the first sentence of § 52-273, the plaintiff's writ was not "allowed and signed within two weeks after the rendition of the judgment or decree complained of." We agree with the state's first jurisdictional claim and, therefore, need not reach the other issues.

In *Simms* v. *Warden,* supra, 229 Conn. 178, we have today concluded that, as a matter of statutory construction, § 52-273 deprives this court of subject matter jurisdiction to hear a writ of error challenging the propriety of a judgment denying a petition for a writ of habeas

corpus regarding a criminal conviction, when the habeas court has denied the petitioner's request for certification to appeal.[4] In this case, besides reiterating the statutory argument that we rejected in *Simms* v. *Warden,* supra, the plaintiff further contends that it is unconstitutional for the legislature to limit this court's authority to decide any writ of error filed in conformity with the rules of the Practice Book.

Before we consider the merits of the plaintiff's constitutional argument, we must determine whether the plaintiff's claims to relief fit within the terms of the writ of error that we have enacted pursuant to our rule-making authority. Practice Book § 4143 (b), on which the plaintiff relies for jurisdiction to proceed in this court, does not provide unlimited authority to bring to this court a writ of error in habeas corpus cases.

Section 4143 (b) allows a petitioner in a habeas corpus proceeding who has been denied certification to appeal to pursue a writ of error only with respect to issues that "do not present any federal question cognizable by the federal district court." This limitation presents a difficulty to the plaintiff in this case because his substantive claim in the habeas court, and in this court, is that he was deprived of the assistance of effective counsel under the sixth and fourteenth amendments to the United States constitution. The plaintiff maintains, nonetheless, that his evidentiary claim entitles him to invoke § 4143. He argues that his evidentiary claim arises as a matter of state law and that this evidentiary claim is both independent of and antecedent to the federal question of ineffective assistance of counsel. We doubt that the drafters of § 4143

___

[4] As in *Simms* v. *Warden,* supra, 229 Conn. 178, this issue is a matter of first impression. Since the particular issue raised in the two cases has never previously been addressed by this court specifically, there is no basis for concluding that legislative inaction ratified our construction of the statute. See id., n.12.

envisaged the administrative complexities that such a bifurcation of habeas appeals would entail. For the purposes of the present proceedings, however, we will assume that the plaintiff's articulation of an evidentiary claim would suffice to permit him to have recourse to Practice Book § 4143 if that provision were not inconsistent with General Statutes § 52-273.

We turn, therefore, to the merits of the plaintiff's constitutional claim that state constitutional principles rooted in the separation of powers established in the Connecticut constitution of 1818 deprive the legislature of authority to limit this court's jurisdiction to determine when we will hear a writ of error.[5] Two cases are central to the plaintiff's argument. The first is *Szarwak* v. *Warden,* 167 Conn. 10, 355 A.2d 49 (1974), in which we restated and applied state constitutional limitations on the authority of the legislature to impair the jurisdiction of the constitutional courts. The second is *State* v. *Assuntino,* 173 Conn. 104, 376 A.2d 1091 (1977), in which we concluded that this court has the authority to adjudicate a common law writ of error even though the legislature has not affirmatively authorized such a writ of error to be brought. These cases do not sustain the plaintiff's claim.

In *Szarwak* v. *Warden,* supra, 167 Conn. 10, we held that state constitutional principles of separation of powers prevent the legislature from conferring broad criminal jurisdiction on a nonconstitutional trial court in derogation of the constitutional jurisdiction of the Superior Court. We reiterated the position that we had taken in *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 127, 32 A.2d 547 (1943), that the constitution of 1818 preserved "the essential characteristics" that this state's

---

[5] The plaintiff has not raised any claim that constitutional principles of due process require an unconditional right to appeal on questions, such as ineffective assistance of counsel, that cannot be raised on direct appeal.

constitutional courts then possessed. We quoted with approval the statement in *Walkinshaw* v. *O'Brien,* supra, 142, that "[i]t is entirely clear . . . that the legislature has not the competency to impair the essential nature or jurisdiction of any of the constitutional courts." *Szarwak* v. *Warden,* supra, did not purport, however, to identify "the essential characteristics" of this constitutional court.

In *State* v. *Assuntino,* supra, 173 Conn. 104, we permitted the state to bring a writ of error to contest dismissal of criminal charges by the Court of Common Pleas, for which the legislature had provided no right of appeal. Recognizing inconsistencies in earlier Connecticut cases about whether a writ of error was purely statutory, we concluded that "the common-law writ of error was adopted by Connecticut as part of its own common law." Id., 110. No statute expressly purported to limit the state's authority to bring a writ of error; id.; and we concluded that the legislature had not impliedly intended to do so. Id., 106. Accordingly, we held that it was "unnecessary for this court to consider whether the jurisdiction to hear such a writ is an essential attribute of the constitutional role of this court . . . ." Id., 110. *Assuntino,* therefore, did not set constitutional limits on the legislature's authority to determine this court's jurisdiction over writs of error.

The constitutional question raised by this case is narrower than the question that remains unanswered by *State* v. *Assuntino,* supra, 173 Conn. 104. We need not decide to what extent the legislature may constitutionally encroach on the writ of error as it existed at common law. The only question before us is whether the legislature may constitutionally limit recourse to a writ of error to review a judgment in a habeas corpus proceeding concerning the validity of a criminal conviction. We are persuaded that, although a writ of habeas

corpus existed at common law, the denial of such a writ was not reviewable either on appeal or by writ of error.

The plaintiff has cited no case, and our research has disclosed none, in which this court or its historical antecedents, at or near the time of the adoption of the Connecticut constitution of 1818, reviewed the merits of a trial court's denial of a writ of habeas corpus. Perhaps the closest analogy may be found in a series of early nineteenth century cases concerning appeals sought to be taken from trial court rulings denying a petition for a new trial. These cases do not support the plaintiff. They uniformly held that, because a petition for a new trial calls upon the trial court to exercise its discretion, a writ of error does not lie on a judgment or decree refusing to grant such a petition. *Magill* v. *Lyman,* 6 Conn. 59, 60 (1825); *White* v. *Trinity Church,* 5 Conn. 187, 188 (1823); *Lewis* v. *Hawley,* 1 Conn. 49, 50 (1814); *Granger* v. *Bissell,* 2 Day (Conn.) 364, 368 (1806).

In the absence of dispositive state cases about Connecticut common law practices, *State* v. *Assuntino,* supra, 173 Conn. 107, enjoins us to "look back to the practice of England." Professor Yackle states that, "[a]t common law, there was no right of appeal from judgments in habeas corpus. [*Ex parte Savarkar,* 2 K.B. 1056 (1910); R. Sharpe, The Law of Habeas Corpus (1976) p. 195; G. Longsdorf, 'Habeas Corpus: A Protean Writ and Remedy,' 8 F.R.D. 179, 189–90 (1948)]. . . . The reason for the lack of appellate process is difficult to ascertain, but it appears that the unavailability of the writ of error in habeas cases may have stemmed from an understanding that habeas was a summary proceeding, even interlocutory in nature. Accordingly, appeal was denied in order to avoid unnecessary delays in reaching final judgment in the case in chief—usually the criminal prosecution of the petitioner." L. Yackle, Postconviction Remedies (1981) § 158, pp. 581–82.

Professor Yackle further notes that "[e]arly state court decisions in this country adopted the British understanding, viewing appellate review in habeas cases as wholly a creature of statute. [See note, J. Crim. L. Criminology and Police Sci. 277 (1936)]. Congress apparently took a similar position regarding the federal writ. Indeed, the Judiciary Act of 1789 neglected to provide for appellate review of habeas proceedings and, instead, restricted the writ of error or appeal to cases in which a sum of money was at stake. . . . [I]t is generally agreed that appellate review was first introduced by the Act of 1867, which also extended the reach of the writ to prisoners held in state custody." Id., p. 582.

A series of late nineteenth century Connecticut cases confirm the accuracy of Professor Yackle's observation with regard to the limitations of the common law of habeas corpus in Connecticut and the implementation of appropriate procedures by statute. The first discussion that we have found in our case law concerning a right to appeal from a judgment rendered pursuant to a writ of habeas corpus with respect to a criminal conviction is *Yudkin* v. *Gates,* 60 Conn. 426, 22 A. 776 (1891). That case held that appellate jurisdiction to hear such an appeal depended upon compliance with the requirements of General Statutes (1888 Rev.) § 1129. Id., 427. As we explained in *State* v. *Caplan,* 85 Conn. 618, 623–24, 84 A. 280 (1912), § 1129 had been enacted in 1882 to provide a general right of appeal for any questions of law thereafter arising in any trial court. There is, therefore, nothing in our case law to suggest that either a common law or statutory right to appellate review of a habeas judgment existed before the enactment of § 1129 in 1882.

Other late nineteenth century cases may help to explain the absence of an earlier appellate remedy for review of habeas corpus proceedings. These cases

emphasize the limited scope of the common law writ of habeas corpus in Connecticut. In *In re Bion,* 59 Conn. 372, 390–92, 20 A. 662 (1890), this court observed that the scope of relief pursuant to a writ of habeas corpus precluded review of mere errors and irregularities of procedure, and focused instead on alleged claims concerning the jurisdiction of the court and its authority to impose the sentence at issue. Pursuing that theme further, in *Scott* v. *Spiegel,* 67 Conn. 349, 35 A. 262 (1896), we cited Swift's Digest for the proposition that "in cases of habeas corpus, by the common law, the 'truth of the return cannot be contested, and there is no remedy for the party aggrieved, but an action on the case for the false return, or by information, or indictment in the name of the public.' . . . 'As the remedy by the common law is very imperfect, it has been supplied in this State by statute.'" Id., 357; see 1 Z. Swift, A Digest of the Laws of the State of Connecticut (1822) pp. 568–69. We specifically noted that, to correct these common law imperfections, "*[i]n 1815,* the legislature of this State had provided for pleadings and procedure in cases of habeas corpus, by an enactment, one section of which has been continued without change in every Revision to this time." (Emphasis added.) *Scott* v. *Spiegel,* supra, 357–58; see also *Whitten* v. *Spiegel,* 67 Conn. 551, 553, 35 A. 508 (1896) (petitioner could not succeed in appeal from denial of writ of habeas corpus because parol evidence was inadmissible to challenge validity of indictment).

In light of these precedents, we are persuaded that, at common law in Connecticut in 1818, neither an appeal nor a writ of error would have been available to review the denial of a writ of habeas corpus in the circumstances of the present case. We have found nothing in the case law or in the secondary literature to demonstrate that Connecticut's long history of recognizing the significance of a right to counsel; see *State* v. *Stod-*

*dard,* 206 Conn. 157, 164–66, 537 A.2d 446 (1988); was ever translated into a common law right to mount a collateral attack on a criminal conviction, through use of a writ of habeas corpus, for lack of effective assistance of counsel. Indeed, as a matter of federal law, that connection was not articulated until *McMann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 663 (1970).

The plaintiff's attack on § 52-273 as unconstitutionally impairing this court's authority to hear a writ of error in habeas corpus cases has, at best, not been affirmatively established. We do not declare statutes to be unconstitutional on such a basis. To the contrary, "[b]ecause a statute carries with it a strong presumption of constitutionality, a challenger must establish its unconstitutionality beyond a reasonable doubt." *Calfee* v. *Usman,* 224 Conn. 29, 33, 616 A.2d 250 (1992); *Sassone* v. *Lepore,* 226 Conn. 773, 778, 629 A.2d 357 (1993).

To summarize, we conclude that, since 1815, the General Assembly has enacted statutes to provide for pleadings and procedures in cases of habeas corpus challenging the validity of a criminal conviction. This history furnishes a constitutional basis for the General Assembly's proper exercise, in 1882, of its legislative authority to enact § 1129 granting a right to appeal in habeas corpus proceedings. Having constitutionally granted a right to appeal in 1882, the General Assembly did not impair "the essential nature or jurisdiction of this court" when it qualified the right to appeal to this court by enacting § 52-470 (b) in 1957. In habeas corpus proceedings, therefore, it was equally constitutional for the General Assembly to limit the right to obtain appellate review through a writ of error, under § 52-273, by excluding cases "which might have been reviewed by process of appeal."

The writ of error is dismissed.

In this opinion BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. I agree with the conclusion reached in Justice Katz's well reasoned dissent that a writ of error may be brought by a petitioner who has been denied certification to appeal in a habeas corpus proceeding under General Statutes § 52-470 (b).[1] I nevertheless write separately to express my great concern over the serious implications that this case and *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994), hold for the writ of habeas corpus.

Today's decision, although technically concerned with the writ of error, will have a devastating effect on habeas corpus, "the great writ of liberty." *Lozada* v. *Warden,* 223 Conn. 834, 840, 613 A.2d 818 (1992). This writ, which has its roots in the Magna Charta, was designed to be a bulwark against miscarriages of justice and convictions that violate fundamental fairness. Id. Chief Justice Swift wrote that "[t]his writ furnishes the strongest security for the liberty of the citizen, and constitutes the most prominent distinction between a free and absolute government." 1 Z. Swift, A Digest of the Laws of the State of Connecticut (1822) p. 568. Indeed, like the federal constitution, this state's first formal constitution enshrined the writ of habeas corpus, as have all of our subsequent charters of liberty.[2]

The majority decision undermines the writ by eliminating appellate review as a matter of right. In addition, because we require ineffective assistance of counsel claims to be raised exclusively through the writ of habeas corpus; *State* v. *Hamilton,* 228 Conn. 234, 242–43, 636 A.2d 760 (1994); *Lozada* v. *Warden,* supra, 223 Conn. 841; *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct.

---

[1] Like Justice Katz, I do not consider the plaintiff's constitutional claim.

[2] See Conn. Const., art. I, § 12. Prior to the adoption of the 1965 constitution, the habeas corpus provision was located in article first, § 14. The federal provision is located in article one, § 9, of the United States constitution.

2922, 91 L. Ed. 2d 550 (1986); today's decision means that a petitioner will be deprived of any state appellate review of this claim unless a justice or judge[3] provides the required certification.

The majority in *Simms* purports to provide an alternative remedy—that is, an appeal to determine whether the habeas court abused its discretion in denying certification[4]—but gives no guidance concerning the standard to be applied in making this determination. Under any standard, we would be required to consider the merits of the appeal in order to determine whether "a question is involved in the [habeas court's] decision which ought to be reviewed . . . ." General Statutes § 52-470 (b). Would the standard be that if there is a little injustice, there is not an abuse of discretion, but if there is a great injustice, then there is an abuse of discretion?

The fact is that this court has dealt harshly with criminal defendants who seek to establish that a trial court has abused its discretion. For example, in a recent appeal challenging the trial court's refusal to grant a defendant a mere one day continuance to obtain preferred counsel, the majority stated that "abuse of discretion" was a standard "that, although not unreviewable,

---

[3] General Statutes § 52-470 (b) provides that the petitioner in a habeas corpus proceeding may obtain certification to appeal from "the judge before whom the case was tried *or a judge of the supreme court or appellate court* . . . ." (Emphasis added.) I agree with the majority in *Simms* v. *Warden,* supra, 229 Conn. 178, that the clear language of § 52-470 (b) permits a party seeking certification to appeal to address their petition *to a specific appellate court judge or justice.* In view of the majority opinions in this case and in *Simms,* it appears that the appellate judges and justices in this state will have a busy schedule. Nevertheless, the right to seek certification from an appellate judge or justice is not an adequate substitute for the unqualified right to appeal via a writ of error.

[4] I presume that the majority would also permit such an appeal if either a justice of this court or a judge of the Appellate Court refused a petitioner's request for certification to appeal.

affords the trial court broad discretion . . . ." *State* v. *Hamilton,* supra, 228 Conn. 250. This "broad discretion" led the majority to uphold the trial court even though there is a constitutional right to counsel of choice; id., 243; and the defendant in the case was only seventeen years old. Id., 236. In fact, my recent search through 200 years of this state's jurisprudence has revealed only one criminal case "in which this court . . . held that the trial court's denial of a motion for continuance constituted an abuse of discretion." *Jackson* v. *Commissioner of Correction,* 227 Conn. 124, 145, 629 A.2d 413 (1993) (*Berdon, J.,* dissenting).

I believe that, with this decision and that in *Simms* v. *Warden,* supra, 229 Conn. 178, a majority of this court furthers its efforts to limit the writ of habeas corpus. I most recently expressed this concern in my dissent in *Jackson* v. *Commissioner of Correction,* supra, 227 Conn. 139, in which I stated: "I must confess that the scales weigh heavily, at least for me, in favor of granting a new trial to persons whose claims cast a substantial cloud on the validity of their convictions. The rules established today have equal application for those who are incarcerated for life as well as those who are awaiting the death penalty. The majority, emulating the United States Supreme Court, restricts habeas corpus in the name of finality of decisions. Lest we forget, there is nothing more final than the imposition of the death penalty."

Indeed, it appears that the goal of executing people with dispatch was what brought about the amendment of the habeas statute to require certification in the first place: "During discussion on the Senate floor concerning the amendment, Senator Elmer S. Watson read into the record a letter from former Chief Justice William M. Maltbie expressing concern over the delay in the executions for first degree murder. The letter stated, inter alia: 'There are . . . two means which have been

used to delay the execution of the death sentence and which . . . may properly be subjected to more regulation than now exists. One of these is the petition for a new trial for . . . newly discovered evidence, with an appeal to the Supreme Court, if it is denied. It has seemed to me that such petitions have been used in certain instances, not because they had any merit, but in a calculated effort to delay the imposition of the penalty. . . . The other means by which, I feel, unjustifiable delay has been caused is through the use of the writ of habeas corpus. . . .' 7 S. Proc., Pt. 5, 1957 Sess., pp. 2938–39." *Iovieno* v. *Commissioner of Correction,* 222 Conn. 254, 259–60, 608 A.2d 1174 (1992). I must agree with Chief Justice Maltbie that the best way to expedite the business of putting people to death is to limit severely the right to appeal in habeas corpus proceedings.

In *Safford* v. *Warden,* 223 Conn. 180, 612 A.2d 1161 (1992), the majority claimed that my fears concerning their apparent assault on the writ of habeas corpus as a vehicle for justice; id., 205 (*Berdon, J.,* concurring); were "baseless" because they had "no hidden agendas." Id., 191 n.13. I believe, however, that this court's own record on appeals and writs of error taken from habeas corpus proceedings in recent years demonstrates just how well founded are the fears I voiced in *Safford.* See, e.g., *Iovieno* v. *Commissioner of Correction,* supra, 222 Conn. 262 (holding that the habeas court had no discretion to consider a petition for certification to appeal that was filed one day after the expiration of the ten day limit imposed by § 52-470 [b]); *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 610 A.2d 598 (1992) (holding that in order to prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must show not only that his or her appeal would have been sustained but for counsel's deficient performance, but also that there is a reason-

able probability that the verdict at trial would have been different); *Jackson* v. *Commissioner of Correction,* supra, 227 Conn. 124 (holding that in order for a habeas petitioner to be entitled to review of a claim not raised on direct appeal, he or she must show that some objective factor external to the defense caused the procedural default and that the default was prejudicial, thereby abandoning the former rule that procedurally defaulted claims were reviewable in habeas proceedings so long as the petitioner had not deliberately bypassed his or her right to review of these claims); *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 589 A.2d 1214 (1991) (abandoning the "deliberate bypass" standard in favor of the "cause and prejudice" standard for claims not raised at trial). Today's decisions in the present case and *Simms* continue that assault on habeas corpus, stripping petitioners of the absolute right to appeal from habeas proceedings.[5]

---

[5] The court in *Walker* v. *Commissioner of Correction,* 223 Conn. 411, 413 n.3, 611 A.2d 413 (1992), raised the issue of subject matter jurisdiction sua sponte in a footnote but did not decide it because the issue had not been briefed by the parties. I dissented in *Walker,* wondering how "the majority [could] profess to be concerned about the 'troubling' subject matter jurisdiction questions presented . . . and then quickly sweep them away in a footnote?" Id., 417. It is clear that if we think that we may not have subject matter jurisdiction, we must raise and decide this issue as a threshold matter, whether or not the parties have raised or briefed it. *State* v. *Carey,* 222 Conn. 299, 305, 610 A.2d 1147 (1992).

There is a bright side of sorts to today's holding. The majority in *Simms* v. *Warden,* supra, 229 Conn. 185–86 n.12, concedes that the decisions in *Iovieno* v. *Commissioner of Correction,* supra, 222 Conn. 254, *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 610 A.2d 631 (1992) (holding that a habeas petitioner who had been denied the right to testify at trial was required to show prejudice in order to prevail on his request for a new trial), and *Walker* v. *Commissioner of Correction,* supra, 223 Conn. 411 (holding that the habeas court had not abused its discretion in denying the petitioner's request for certification to appeal), were rendered without subject matter jurisdiction. Therefore, these cases must be viewed as no longer having any force and effect. Nevertheless, while I am happy to see these cases vacated sub silentio, I fear that today's holding will be far more destructive of the Great Writ of liberty than anything that has come before.

In my concurring opinion in *Safford* v. *Warden,* supra, 223 Conn. 206, I pointed out the following: "Justice Charles Evans Hughes wrote over fifty years ago that '[i]t must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired.' *Bowen* v. *Johnston,* 306 U.S. 19, 26, 59 S. Ct. 442, 83 L. Ed. 455 (1939). The writ of habeas corpus ' "holds an honored position in our jurisprudence . . . [as] a bulwark against convictions that violate 'fundamental fairness." ' *Gaines* v. *Manson,* 194 Conn. 510, 516, 481 A.2d 1084 (1984), quoting *Engle* v. *Isaac,* 456 U.S. 107, 126, 102 S. Ct. 1558, 71 L. Ed. 2d 783, reh. denied, 456 U.S. 1001, 102 S. Ct. 2268, 73 L. Ed. 2d 1296 (1982)." Today's decision is fundamentally inconsistent with the writ that is designed to protect life and liberty.

I respectfully dissent.

KATZ, J., with whom BERDON, J., joins, dissenting. I disagree with the majority's conclusion that General Statutes § 52-273[1] deprives this court of subject matter jurisdiction over the writ of error brought by the plaintiff. Because I agree with the plaintiff's statutory argument, I do not consider his constitutional claim.

The plaintiff, Richard Carpenter, is currently serving a twenty year sentence for manslaughter in the first degree. He brought a petition for a writ of habeas corpus alleging that he had been denied his constitutional right to effective assistance of counsel at trial. The habeas court denied the petition. The plaintiff then sought certification to appeal pursuant to General Statutes § 52-470 (b).[2] This, too, was denied. The plaintiff

[1] General Statutes § 52-273 provides in pertinent part: "No writ of error may be brought in any civil or criminal proceeding for the correction of any error which might have been reviewed by process of appeal."

[2] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release

then brought a writ of error from the decision of the habeas court to this court.

Since 1935, § 52-273 and its predecessors have prohibited the bringing of a writ of error "for the correction of any error which might have been reviewed by process of appeal." The majority construes the language "process of appeal" to encompass the qualified right of appeal provided by § 52-470 (b). I disagree with this construction. It is undisputed that the habeas court's denial of the plaintiff's request for certification pursuant to § 52-470 (b) left the plaintiff *without* a right to appeal.[3] At that point, the prohibition of § 52-273 became inapplicable.

It is important to recognize that the construction of § 52-273 that I urge is not new. For eighteen years, this court has construed § 52-273 to allow the bringing of a writ of error whenever an *absolute* right of appeal does not exist. In *State* v. *Audet,* 170 Conn. 337, 365 A.2d 1082 (1976), the state sought to appeal from the trial court's dismissal of four counts against the defendant. The relevant statute, General Statutes (Rev. to 1975) § 54-96,[4] provided that the state could appeal

by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[3] In the companion case of *Simms* v. *Warden,* 229 Conn. 178, 186–87, 640 A.2d 601 (1994), the majority suggests that its holding does not leave a petitioner without a remedy because the petitioner may appeal the habeas court's denial of certification to appeal. The majority concedes, however, that the scope of review would be limited to whether the habeas court abused its discretion in refusing certification. Such limited review can hardly be considered a remedy at all, and certainly is no substitute for full appellate review of the merits of a claim.

[4] General Statutes (Rev. to 1975) § 54-96 provided: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court, in the same manner and to the same effect as if made by the accused."

only with the permission of the presiding judge. Because the presiding judge had denied permission, this court dismissed the state's appeal. Nevertheless, we noted that the state could "use the writ of error in a criminal case as a matter of right . . . ."[5] Id., 341 n.1.

Two years later, on April 10, 1978, the justices of this court met and adopted Practice Book § 3090. Section 3090 provided, in part, that: "An aggrieved party may file a writ of error in the supreme court only to review the final judgment of a judge or court in a case where no *unqualified* statutory right of appeal has been provided. . . ." (Emphasis added.) Then, as now, the right to appeal from a habeas proceeding was qualified by the certification requirement.[6] Therefore, § 3090 clearly permitted the bringing of a writ of error after a habeas court had denied certification. Although the legislature amended § 52-273 in 1982, it did not change the statute substantively.

It is a fundamental rule of statutory construction that " 'the legislature is presumed to be aware of the judicial construction placed upon its enactments.' *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 30, 610 A.2d 1292 (1992)." *Cappellino* v. *Cheshire,* 226 Conn. 569, 576, 628 A.2d 595 (1993). Furthermore, in revising a statute, "the legislature re-enact[s] it and is presumed to have impliedly ratified prior judicial interpretation of it. *State* v. *Kyles,* 169 Conn. 438, 442,

---

[5] At the time, General Statutes § 52-273 provided: "No writ of error shall be brought in any civil or criminal proceeding, unless allowed and signed within two weeks after the rendition of the judgment or decree complained of, nor for the correction of any error which might have been reviewed by process of appeal."

[6] General Statutes (Rev. to 1977) § 52-470 provided in pertinent part: "No appeal from the judgment rendered in a habeas corpus proceeding . . . shall be taken unless the appellant . . . petitions the judge before whom the case was tried or a judge of the supreme court to certify that a question is involved in the decision which ought to be reviewed by the supreme court and the judge so certifies."

363 A.2d 97 (1975); *Turner* v. *Scanlon,* 146 Conn. 149, 156, 148 A.2d 334 (1959); see *Anderson* v. *Ludgin,* 175 Conn. 545, 555, 400 A.2d 712 (1978)." *Grodis* v. *Burns,* 190 Conn. 39, 47 n.5, 459 A.2d 994 (1983). Applying these principles of statutory construction, the legislature's failure to change § 52-273 in 1982 must be construed as a ratification of this court's interpretation that only an absolute right to appeal bars a writ of error.

Furthermore, in 1986, § 3090, now § 4143,[7] was amended to provide explicitly that either the state or the petitioner could bring a writ of error to this court if the habeas court denied certification to appeal. In *Laws* v. *Warden,* 218 Conn. 479, 483, 590 A.2d 436 (1991), this court held that § 4143 was "a judicially approved construction" of the habeas statute, § 52-470 (b). See also *Franko* v. *Bronson,* 19 Conn. App. 686, 693, 563 A.2d 1036 (1989) ("[i]f the petition for certification to appeal is denied, the petitioner may bring a writ of error in the Supreme Court under General Statutes § 52-273 and Practice Book § 4143").

We have long held that "the legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation. *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d

---

[7] Practice Book § 4143 (b) provides: "No writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal, or by way of certification, except that the state may bring a writ of error where it has been denied certification to appeal in a habeas corpus proceeding pursuant to Gen. Stat. § 52-470 (b) and a petitioner may bring a writ of error in a habeas corpus proceeding requiring certification to appeal where petitioner has been denied certification to appeal and the issues sought to be raised do not present any federal question cognizable by the federal district court, or (2) the parties, by failure timely to seek a transfer or otherwise, have consented to have the case determined by a court or tribunal from whose judgment there is no right of appeal or opportunity for certification."

672 (1987), quoting *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987). This presumption is strengthened when the legislature has affirmatively reenacted the statute after the interpretation in question." (Internal quotation marks omitted.) *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 627, 594 A.2d 464 (1991); *White* v. *Burns,* 213 Conn. 307, 333, 567 A.2d 1195 (1990); *Scheyd* v. *Bezrucik,* 205 Conn. 495, 506, 535 A.2d 793 (1987). Even if the 1982 amendment of § 52-273 is ignored, the legislature's nonaction over the past eighteen years in the face of this court's explicit interpretations of § 52-273 as allowing the bringing of a writ of error after a court denies certification must be viewed as a validation of that interpretation. *Habetz* v. *Condon,* 224 Conn. 231, 239 n.12, 618 A.2d 501 (1992) ("[w]here this court interprets a statute and the legislature fails to take action to change that interpretation, it raises the presumption that the legislature has acquiesced in that interpretation"); *Union Trust Co.* v. *Heggelund,* supra, 627.

The majority ignores these fundamental principles of statutory construction and holds that this court's long-standing interpretation of § 52-273 is invalid. This holding is predicated on the conclusion of the majority in the companion case of *Simms* v. *Warden,* 229 Conn. 178, 183, 640 A.2d 601 (1994), that, in adding the certification requirement to the habeas statute in 1957, "the legislature could not have intended a writ of error to serve as an alternate, unrestricted route for appellate review." As the majority concedes, however, the writ of error did not become an "unrestricted route for appellate review" until the Practice Book was amended in 1986. The current, more liberal scope of the writ of error is irrelevant to determining what the legislature's intent was when it amended the habeas statute in 1957

to require certification. Their analysis reveals that the majority is essentially making policy, rather than construing statutes.

I respectfully dissent.