CALVIN AREY *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued March 3—decision released June 8, 1982

*Charles D. Gill,* public defender, for the appellant (plaintiff).

*Patricia M. Strong,* assistant attorney general, with whom were *Stephen J. O'Neill,* assistant attorney general and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant).

PARSKEY, J.   In this case the plaintiff[1] claims that the conditions in the segregation unit at the

---

[1] The hearing before the trial court involved the plaintiff and seven other inmates. Four of these, namely, Abraham Lee, Ethiell McLain, David Pagano and Clifford Williams, in addition to the plaintiff, are involved in this appeal. Lee was placed in the segregation unit for disciplinary reasons, McLain and Williams for their

correctional institution at Somers constitute cruel and unusual punishment within the meaning of the eighth amendment to the constitution of the United States.[2] The trial court ruled against the plaintiff and dismissed his habeas corpus petition and the plaintiff appealed.

The plaintiff is confined in an administrative segregation unit at Somers known as "F" block. This unit bears a physical resemblance to other cell blocks in which inmates in the general institutional population are incarcerated. Security measures in and around "F" block, however, are tighter than those in cell blocks inhabited by the general inmate population. "E" block, an administrative segregation unit adjacent to "F" block, houses inmates suffering from sexually-oriented behavioral disorders. These inmates are subjected to less restrictive conditions of confinement than those in "F" block.

"F" block includes a housing unit made up of two double tiers of cells located back to back in the center of a larger cell block. Surrounding this double-tiered cell unit are concrete corridors. The individual cells in this unit are similar in layout and structure to those inhabited by members of the institution's general population. Each cell is approximately five feet by nine feet, with unpainted

own protection and Pagano for behavioral problems. Pagano and Williams were no longer in the segregation unit at the time of the hearing but the trial court decided their cases because of the possibility of recurrence. *Taylor* v. *Robinson,* 171 Conn. 691, 694, 372 A.2d 102 (1976). The non-participating parties have stipulated that the decision in this case will apply to their appeals.

[2] An additional ground, that the plaintiffs' religious rights have been interfered with, has not been briefed and therefore is considered abandoned. *State* v. *Hoffler,* 174 Conn. 452, 457, 389 A.2d 1257 (1978).

concrete walls on three sides and steel bars on the side facing the concrete corridor. Inside each "F" block cell is a mattress with steel spring, a small table attached to the wall, a sink and a seatless toilet. The steel bars on the front side of the cell are equipped with a slot through which an inmate may receive a meal tray. All inhabitants of "F" block spend much of their time locked in their cells. An "F" block inmate is permitted one hour daily exercise outside his cell (excepting weekends and holidays), two showers per week, and access to the institution's hospital for medical treatment when warranted. He is also permitted to receive visitors outside his cell under normal institutional regulations governing visitors and visiting hours. Whenever an "F" block inmate leaves his cell he is escorted therefrom by a member of the correctional staff.

"F" block inmates are not permitted to leave their cells to attend religious services or to go to the institution's library. Institution chaplains have unrestricted access to inmates in "F" block if their presence is requested. Also upon request "F" block inmates may receive books and materials from the library, including microfilm from the law library. Specialized rehabilitation programs as well as psychiatric consultation are also available to these inmates.

"F" block inmates exercise in groups of ten to fifteen, under heavy escort, in a blacktopped area adjacent to the main outdoor exercise area utilized by inmates in the general population. They are not allowed to use recreational facilities at the same time as inmates in the general population because, in the opinion of the commissioner of the depart-

ment of corrections, joint use would create potential security problems. In support of the security measures evidence was adduced of a recent incident in which an "F" block inmate climbed to the top of a two-story structure adjoining the blacktopped recreation area.

Exclusive of weekends and holidays, "F" block inmates are allowed to have their recreation outdoors year round. Inmates in the general population exercise in indoor gymnasium facilities during a three-month winter period. In the commissioner's opinion logistical and other security problems preclude the correctional authorities from allowing "F" block inmates access to outdoor exercise facilities on those winter weekends and holidays when the general population recreates indoors.

Under directives issued by the commissioner of corrections inmates are placed in administrative segregation at the inmate's own request, for the protection of the inmate or others or for the welfare of the institutional community, or for disciplinary purposes. The plaintiff was placed in administrative segregation for disciplinary reasons.

The classification system under which inmates are assigned to "F" block is not being challenged nor is the specific reason assigned for the confinement of the plaintiff or any other inmate in "F" block. Nor does the plaintiff claim that any of the challenged rules has jeopardized his health. His claim is that the totality of the conditions and procedures is so counter-rehabilitative and oppressive as to constitute cruel and unusual punishment. The trial court, after a plenary hearing which included a view of the segregation unit at the Somers cor-

rectional institution, concluded that the plaintiff had not been subjected to cruel and unusual punishment. We agree.

The eighth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment; *Robinson* v. *California,* 370 U.S. 660, 666, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962); precludes the imposition of cruel and unusual punishment on an individual convicted of a crime. Cruel and unusual punishment encompasses more than barbarous physical punishment. *Rhodes* v. *Chapman,* 452 U.S. 337, 345, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). It also includes punishments which involve the unnecessary and wanton infliction of pain; id., 346; *Gregg* v. *Georgia,* 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (joint opinion); and those which are grossly disproportionate to the severity of the crime. *Rhodes* v. *Chapman,* supra; *Coker* v. *Georgia,* 433 U.S. 584, 592, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977) (plurality opinion).

The test for determining whether a given set of conditions of confinement violates the eighth amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. *Rhodes* v. *Chapman,* supra; *Trop* v. *Dulles,* 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality opinion). These standards are established not by the opinion of experts as to desirable prison conditions; *Rhodes* v. *Chapman,* supra; *Gregg* v. *Georgia,* supra; nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. *Rhodes* v. *Chapman,* supra; *Rummel* v. *Estelle,* 445 U.S. 263, 275, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). Unquestioned and serious deprivations of basic

human needs; *Hutto* v. *Finney,* 437 U.S. 678, 685, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978); and deprivation of the minimal civilized measure of life's necessities; *Estelle* v. *Gamble,* 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), reh. denied, 429 U.S. 1066, 97 S. Ct. 798, 50 L. Ed. 2d 785 (1977); are obvious cases of eighth amendment violations. Examples of such cases may be found in *Ramos* v. *Lamm,* 639 F.2d 559 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 101 S. Ct. 1759, 68 L. Ed. 2d 239 (1981); *Lightfoot* v. *Walker,* 486 F. Sup. 504 (S.D. Ill. 1980); *Laaman* v. *Helgemoe,* 437 F. Sup. 269 (D.N.H. 1977); *Anderson* v. *Redman,* 429 F. Sup. 1105 (D. Del. 1977). "But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes* v. *Chapman,* supra, 347.

The principal claim which the plaintiff pursues in his brief is that the totality of conditions and restrictions in "F" block constitutes cruel and unusual punishment. The specific claims are (1) insufficient outside recreation, (2) insufficient showers per week, (3) consumption of meals in same cell where other bodily functions are performed, and (4) inadequate access to the institution's library. Because the fourth specification, although involving a fundamental constitutional right; *Bounds* v. *Smith,* 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); does not implicate the eighth amendment; see *Nadeau* v. *Helgemoe,* 423 F. Sup. 1250, 1272 (D.N.H. 1976); we do not consider it.

With respect to the remaining eighth amendment claims, the evidence does not support the conclusion

that the specified conditions, whether viewed individually or in combination, add up to cruel and unusual punishment. Segregation itself is not a *per se* violation. *O'Brien* v. *Moriarty,* 489 F.2d 941, 944 (1st Cir. 1974); *Nadeau* v. *Helgemoe,* supra, 1261. Whether or not one hour of outside recreation five days a week is sufficient, there is no claim and no evidence to support a claim that the plaintiff's health has been jeopardized or adversely affected by the claimed inadequacy of the recreation activity. Absent such evidence, what may be desirable is not necessarily constitutionally mandated. The same reasoning applies to the bathing arrangements. There is no claim and no evidence to support a claim that two showers a week are not sufficiently hygienic. Nor is there any evidence of a deliberate indifference to the plaintiff's basic hygienic needs. Respecting the serving and consumption of meals in the segregated cell, there is no claim and no evidence to support a claim that the food served to the plaintiff is deficient in quantity, quality or nutrition or that the cell itself is unsanitary. If the consumption of food in a cell containing toilet facilities or if such consumption in segregation rather than in a communal setting is not ideal or even desirable there is no claim and no evidence to support a claim that the setting in which the meals are served and consumed offends the standards of decency. The plaintiff's claim that the totality of conditions in segregated cells in "F" blocks offends the eighth amendment finds no support in the record and therefore must fail.

In its memorandum of decision the trial court opined that "[t]he burden rests upon the [plaintiff] to show beyond a reasonable doubt that the challenged practices, originating in administrative

directives, are so cruel and unusual as to violate the eighth amendment." This is not a correct statement of the law. The plaintiff has the burden of establishing the underlying facts, that is, the conditions of his confinement, by a fair preponderance of the evidence. *Blue* v. *Robinson,* 173 Conn. 360, 370, 377 A.2d 1108 (1977). Whether the proven facts constitute a violation of the eighth amendment involves a question of federal constitutional law. See *Carter* v. *Jury Commission,* 396 U.S. 320, 330, 90 S. Ct. 518, 24 L. Ed. 2d 549 (1970); *State* v. *Cobbs,* 164 Conn. 402, 407, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973). In this case because the basic facts respecting recreation, bathing arrangements and meals are not in dispute "[i]t is of negligible consequence, so far as any question before us is concerned, what the court did with the burden of proof." *Noll* v. *Moran,* 94 Conn. 452, 455, 109 A. 241 (1920).

The plaintiff challenges the court's refusal to permit testimony respecting the dimensions of the plaintiff's cell in the segregation unit, the proximity of "Death Row" to the segregation unit, lighting and ventilation in "F" block, and evidence respecting the United Nation's standards for lighting and ventilation. Because in any trial facts to be proved are not reviewed in a vacuum but rather in relation to the facts in issue; *Eason* v. *Williams,* 169 Conn. 589, 591, 363 A.2d 1090 (1975); we first examine the procedural posture of habeas corpus.

At common law habeas corpus was a formalistic proceeding. The application played no role in framing the issues, its only purpose being to secure the issuance of the writ. *Adamsen* v. *Adamsen,* 151

Conn. 172, 176, 195 A.2d 418 (1963). The return, whose truth could not be contested; *Scott* v. *Spiegel,* 67 Conn. 349, 357, 35 A. 262 (1896) ; limited the proceeding to the determination of a question of law. Early on the legislature corrected this deficiency by permitting the statements in the return to be contested. Id., 358. At that point and until fairly recently the issues on which a subsequent trial was to be held were framed by the return and the pleadings subsequent thereto. General Statutes § 52-469; *Adamsen* v. *Adamsen,* supra; *Kennedy* v. *Walker,* 135 Conn. 262, 265, 63 A.2d 589 (1948), aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715, reh. denied, 337 U.S. 934, 69 S. Ct. 1493, 93 L. Ed. 1740 (1949). In recent years the application has come to be regarded as a pleading in the nature of a complaint; *McPheters* v. *Pollard,* 146 Conn. 509, 510, 152 A.2d 632 (1959) ; and the return in the nature of an answer. The pleadings in this case are so framed. Once the issues have been joined the evidence proffered must be relevant to these issues. *Hogewoning* v. *Hogewoning,* 117 Conn. 264, 265, 167 A. 813 (1933). While, because of the nature of the proceeding, there may be cases where a relaxation of the ordinary rules of evidence may be justified, such a departure calls for the exercise of a cautious discretion; id., 265–66; and does not mean that the rules should be ignored.

The amended petition makes no mention of lighting or ventilation either in its factual averments or in its claims for relief. Neither does it set forth any claims respecting the size of the segregation cell or of its proximity to "Death Row." Because the trial court inspected the cell in question any error with respect to the latter matters would not

have been harmful in any event. Nevertheless, because the proffered evidence was not relevant to the issues, its exclusion was proper. *State* v. *Ward,* 172 Conn. 163, 168, 374 A.2d 168 (1976).

There is no error.

In this opinion the other judges concurred.