[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Robert Craig, the petitioner, pleaded guilty on January 28, 1985 to one count of murder (Conn. Gen. Stat. Sec.53a-54a) and one count of carrying a pistol without a permit (Conn. Gen. Stat. Sec. 29-35). His pleas were entered before the Hon. Robert J. Testo under the doctrine enunciated in North Carolina v. Alford.[1] He was sentenced on April 12, 1985 to a total effective term of thirty-five (35) years, execution suspended after thirty (30) years followed by a probationary period of five (5) years. According to the prosecuting authority, the petitioner shot to death his twenty-four (24) year old girlfriend, Dorothy Caciopoli, on April 20, 1984 by placing a gun to the back of her head and firing. He dumped her body into New Haven Harbor.
Mr. Craig had a criminal record dating back to 1972. He had served time in jail. He had, prior to the murder charge, pleaded guilty to other criminal charges and he was familiar with a plea canvas. At the time of his sentencing, Craig was thirty (30) years of age. Prior to the date he pleaded guilty to the instant charges, Craig had denied guilt. He also contended that he had been arrested on a pretext for charges of issuing bad checks, that he confessed to the murder because he was suffering from drug abuse withdrawal and consequently, his statement was not voluntarily made. He had been advised of his rights, including his right to remain silent, upon his arrest and he appeared to the arresting officers to be in full control of his faculties. The police officers felt that he understood what was occurring. The police brought Craig to headquarters about 10:30 a.m. He made the confession after 5:00 p. m. The statement was taped. He admitted murdering the victim although he was not certain whether he killed her as an "act of love" or to prevent her from telling the police about his illegal activities. In any event, there was a full hearing on Craig's Motion to Suppress during which Craig called as his witness, Dr. James R. CT Page 9731 Merikangas, a neurologist and psychiatrist. Merikangas stated that at the time of his confession, Craig was suffering from "the acute and chronic effects of drug, multiple drug abuse, alcohol abuse,. . .was in a state of withdrawal from drugs and alcohol and was suffering from his underlying mental illness, which is probably an affective psychosis,. . ." Merikangas opined that the petitioner did not understand his Miranda warnings and that his confession was involuntary. The Court concluded nonetheless that Craig's statement was voluntary and the case proceeded to trial. After the state concluded its case in chief, Craig pleaded guilty.
Three days prior to his change of plea, Craig was being transported to the New Haven Correctional Center in a sheriff's department van when same was involved in a minor accident. The petitioner hit his head causing an injury to his head, to his neck and to his lower back. He was examined and diagnosed as having sustained a contusion to the right occipital area of his head. He was given motrin and robaxin as medications. X-Rays of his neck and back were negative.
Craig previously had been prescribed thorazine while he was confined at the Whalley Avenue jail pending his trial. According to the evidence adduced during the habeas corpus trial, the thorazine was administered to help him sleep. He continued to take thorazine from April, 1984 until February, 1985. Craig never told his attorneys that he was having a problem understanding the proceedings at any time between his arrest and his sentencing.
The petitioner's first claim is that the court failed to inquire fully of him, at the time of plea, in accordance with the provisions of Sections 711 and 712 of our Practice Book. Craig asserts that his plea was not voluntary because he was suffering the effects of the motor vehicle accident which occurred three days earlier compounded by the fact that he was taking thorazine, motrin and robaxin. Had the court made a complete canvas of his plea, the plea would not have been accepted. Consequently, he claims that his constitutional rights under the fifth and fourteenth amendments have been violated.
The respondent asserts that Craig should have raised the issue by moving to withdraw his pleas pursuant to Sections 720 and 721 of the Practice Book. He points out that prior to the entry of the petitioner's pleas, the jury had been impaneled, a motion to suppress had been argued over a period of four days and that at no time from jury selection through sentencing did Craig complain to anyone of being unable to CT Page 9732 comprehend any aspect of the proceedings. To come forward six (6) years after entry of his pleas and raise his claims for the first time in a habeas corpus petition is inequitable. Craig bears a heavy burden of proof because his "collateral attack of the conviction conflicts with the strong interest in the finality of judgments and in orderly trial procedure." Henderson v. Kibbe, 431 U.S. 145, 154,97 S.Ct. 1730, 52 L.Ed.2d 203 (1976). Among the burdens the petitioner must meet is establishing the "cause and prejudice" standard enunciated in Johnson v. Commissioner,218 Conn. 403 (1991).
 "In Johnson v. Commissioner. . . our Supreme Court adopted the federal `cause and prejudice' standard from Wainwright [Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct 2497, 53 L.Ed.2d 594 (1977)] for habeas review of constitutional claims not raised at trial. This standard applies in cases involving procedural default, such as the failure to challenge a jury array before trial;. . .or failure to insist that the voir dire be recorded. The Wainwright standard requires that the petitioner show good cause for the failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation. . . .The petitioner must establish both elements to obtain relief. Johnson v. Commissioner, supra, 84."
Giannotti v. Warden, 26 Conn. App. 125, 129 (1991).
In the case at bar, the petitioner has failed to produce any evidence that there was good cause for his failure to move to withdraw his pleas of guilty and/or to take a direct appeal of the constitutional claims he raises for the first time by way of habeas corpus. His claim with respect to the inadequacy of the trial court's canvas of his plea is denied.
The petitioner next asserts that his trial counsel "provided ineffective assistance because he failed to protect the petitioner from an invalid waiver of his constitutional rights." The testimony of Craig's trial counsel was that Craig never told him he was unable to understand any of the proceedings. Counsel never had cause to be concerned about his client's ability to comprehend. Attorney Sweeney testified that he and the petitioner had several discussions about the case, including the defenses they could present. He did not specifically ask Craig what effect, if any, the medications he was taking had on him. He did, however, discuss the medications with Dr. Merikangas in conjunction with a possible defense of extreme emotional disturbance. CT Page 9733 There was no indication from the doctor that thorazine impaired Craig's competency.
In a habeas corpus petition the petitioner has the burden of proof of establishing the underlying facts that form the basis of the claimed violations by a fair preponderance of the evidence. Arey v. Warden, 187 Conn. 324,331 (1982). The petitioner has failed to meet that burden, with respect to his claim of ineffective assistance of counsel.
 "The burden is on the petitioner to establish that counsel's conduct falls below the Strickland [Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] standard. Quintana v. Warden, 220 Conn. 1, 5, 593 A.2d 964 (1991). The proper standard for attorney performance is that of reasonably effective assistance as measured by the bar generally. Id., 6. The petitioner has not sustained this burden."
Gianotti v. Warden, 26 Conn. App. 125, 131 (1991).
The petition for a writ of habeas corpus is denied.
Hon. Howard Scheinblum Superior Court Judge