[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The respondent has filed motions to quash the habeas corpus petitions filed by the eight petitioners named in the caption. Because the issues presented by these motions to quash are the same, the court heard oral argument and received written memoranda pertaining to these motions as a group.
In their respective petitions the petitioners essentially claim that the respondent erroneously and unconstitutionally labelled them as members of various street gangs, which labelling has resulted in "high risk" classifications of these petitioners by the respondent. The allegedly erroneous high risk classification results in more limited privileges than these inmates would otherwise exercise within the correctional system. The respondent's position is that security classification claims fall outside the subject matter jurisdiction of habeas corpus in that such claims fail to attack the fact or length of confinement. The court agrees.
A motion to quash may be used to attack the legal sufficiency of a petition seeking habeas corpus relief, Practice Book § 532;Macri v. Hayes, 189 Conn. 566 567 n. 2 (1983). When considering a motion to quash, the allegations contained in the petition are deemed admitted, Practice Book § 532. Because a motion to quash is procedurally equivalent to a demurrer or motion to strike, Doe v.Doe, 163 Conn. 340, 341 (1972), resorting to facts outside those alleged in the petition is prohibited, Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 348 (1990). CT Page 10777
"The writ of habeas corpus is available to a person restrained of his liberty who desires a hearing to determine the legality of his detention," Flaherty v. Warden, 155 Conn. 36, 39 (1967). Ordinarily, the writ is unavailable for any other purpose, Id, 40.
Our Supreme Court has implicitly recognized an exception to this proposition where the complaint asserts a violation of the constitutional prohibition against cruel and unusual punishmentArey v. Warden 187 Conn. 324 328 (1982) Cruel and unusual punishment refers to punishment which involves the unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime, Id.
At oral argument the petitioners conceded that their present security status does not constitute cruel and unusual punishment per se, i.e. the petitioners agree that, if their high risk classification was accurate, the prison conditions they experience are not, in themselves, cruel or unusual. Instead, the petitioners contend that the mistaken classification converts lawful punishment into cruel and unusual punishment. This argument is meritless. In order to constitute cruel and unusual punishment, a prison official's acts "must result in the denial of the minimal civilized measure of life's necessities,'" Farmer v. Brennan,
511 U.S. ___; 128 L.Ed 811, 823 (1994). If the respondent provides the minimal civilized measure of life's necessities to these petitioners, irrespective of their security classification, those conditions cannot, as a matter of law, constitute cruel and unusual punishment, even though the petitioners might enjoy fewer privileges than other prisoners because of their higher risk classifications.
In Dukuley v. Warden, 34 Conn. Sup. 88 (1977), a habeas court overruled a demurrer to a prayer for relief in a habeas case The habeas court held that, because a writ of habeas corpus was the only practical procedure available to redress inmates' claims regarding the conditions of their confinement, habeas corpus relief could be afforded to remedy such claims, even though the claims fell short of attacking the fact of confinement itself. Our Supreme Court, however, in Sanchez v. Warden, 214 Conn. 23 (1990), expressed strong doubt concerning the continued vitality of the holding of Dukuley v. Warden, supra. The Supreme Court's doubts were based on the availability of inmate recourse to the remedies provided under 42 U.S.C. § 1983 and 1988 to correct illegal or unconstitutional conditions of confinement, Id, 34. CT Page 10778
In Vincenzo v. Warden, 26 Conn. App. 132, 138 (1991), the Appellate Court cited Sanchez v. Warden, supra, to support the proposition that issues outside of the lawfulness of detention itself cannot properly be reviewed in a habeas action. The Appellate Court found a lack of subject matter jurisdiction for a habeas court to entertain a claim that a prisoner's custody was illegal because the parole board operated in violation of the UAPA with respect to his parole status. The court held that unless the claimed violation implicates a liberty interest, as opposed to some other legal right or interest, the habeas court cannot decide the matter, Id, 133.
At least one lower court decision has interpreted the decision in Vincenzo v. Warden, supra, to eliminate conditions of confinement claims from the jurisdictional realm of habeas corpus relief. In Allen v. Commissioner, 8 Conn. L. Reptr. No. 15, 478 (April 12, 1993), Judge Hodgson held that, as a consequence ofVincenzo v. Warden, supra, a writ of habeas corpus may legitimately challenge only the fact of custody or its duration but not the circumstances of prison life, Id., 480.
With this background in mind, the court concludes that Dukuley v. Warden, supra, is no longer viable precedent to permit a habeas court to hear and decide claims regarding conditions of confinement in general. The court holds that a habeas court has subject matter jurisdiction to hear and decide only those cases that challenge the fact or duration of imprisonment and such jurisdiction does not extend to challenges to the conditions of confinement unless the claim amounts to one alleging a violating of the bar against cruel and unusual punishment such as was considered under Arey v. Warden, supra. As noted above, the petitioners have acknowledged that they make no claim that the conditions under which they are serving their sentences are, in and of themselves, cruel or unusual punishment.
The petitioners also fail to make a legitimate claim that a "liberty interest" is implicated by their purportedly erroneous security classification. Their wrongful classification claims do not attack the sentences which they serve but merely the security level at which those sentences are being served.
A liberty interest may be created by constitutional or statutory provisions, Hewitt v. Helms, 459 U.S. 460, 469 (1983);Vincenzo v. Warden, supra, 138. There is no constitutionally mandated liberty interest entitling an inmate to receive a CT Page 10779 particular security classification, Hewitt v. Helms, supra, 468;Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460
(1989); Moody v. Daggett, 429 U.S. 78, 88, fn. 9 (1976); Meachum v.Fano, 427 U.S. 215, 224 (1976); Gittens v. Lefevre, 891 F.2d 38, 40
(2d Cir. 1989); McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). Such a liberty interest maybe created by statute, KentuckyDept. of Corrections v. Thompson, supra; Hewitt v. Helms, supra, 469.
The mere fact that procedural guidelines have been promulgated does not create such a statutory liberty interest, Hewitt v. Helms,
supra, 471. The enabling statutes and regulations promulgated thereunder must be of an "unmistakably mandatory character," Id., (emphasis added).
In the present cases no such mandatory language exists or is alleged to exist. General Statutes § 18-81 confers upon the respondent unfettered discretion in classifying inmates. The administrative directives cited likewise fail to mandate particular classifications nor limit the respondent's ability to alter classification criteria at any time. Consequently, no statutorily created liberty interest is abridged by the respondent's classification of these petitioners.
The petitioners also argue that their security classifications cause a "loss" of good time credits. This is a mischaracterization of the consequences of the respondent's classification. The petitioner's make no claim that the mere classification in a high risk group has resulted in the loss of earned good time credits. Rather, they argue that the high risk classification causes a loss in the ability to be eligible for certain credits in futuro. The acts of revoking credits previously earned by an inmate and classifying an inmate at a level which makes that inmate ineligible to earn certain credits in the future are very different actions. While an inmate may have a liberty interest in retaining credits he has already earned, no liberty interest exists as to credits an inmate might have earned at some later date.
It may be that these petitioners can prove violations of constitutional or statutory law by way of erroneous classification in some other forum, such as by bringing a civil action under42 U.S.C. § 1983 and 1988 or even by writ of mandamus, but because their claims of misclassification fail to implicate a genuine liberty interest cognizable in habeas corpus, the motions to quash are granted, and the petitions are dismissed. CT Page 10780
Sferrazza, J.