[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, a sentenced inmate at the York Correctional Institution in Niantic, Connecticut, has filed a petition for a writ of habeas corpus. She brings this action against the warden at York.
The petitioner alleges that the Connecticut Department of Corrections' practice of confining two inmates in the same cell at York ("double ceiling") constitutes cruel and unusual punishment in violation of theEighth Amendment to the United States Constitution.[1]
In her pleadings, the petitioner alleged that the practice of double celling has resulted in a loss of privacy, has subjected her to malodorous and unhealthy conditions, and has required her to live with numerous cellmates, some of whom have antagonized, harassed and threatened her. In addition, the petitioner specifically alleged that she was assaulted and injured by one of her cellmates on February 15, 1996. The petitioner contends that the defendant has displayed "deliberate indifference to her safety" and refused to take corrective action when she complained about the abusive conditions to which she was allegedly subjected. CT Page 7931
A contested hearing on the petition for habeas corpus was held on February 13-14, 2001. At that hearing, the petitioner proceeded pro se. The Department of Corrections was represented by Assistant Attorney General Madeline Melchionne.
The petitioner testified on her own behalf and introduced the testimony of four other witnesses. She also entered 19 documents into evidence as full exhibits. The defendant offered the testimony of two witnesses and submitted one document into evidence. The court has carefully considered all of the evidence introduced at this proceeding.
 Factual Findings
The petitioner is serving a total effective sentence of 30 years incarceration as a result of her conviction in 1997 on two counts of attempted first degree assault, and one count of carrying a pistol without a permit. The petitioner was arrested for those charges on June 29, 1995, and has been in custody since that date. She has been confined at York, the state's maximum security facility for female offenders, at all times relevant to this proceeding.
The petitioner has lived with 103 different cellmates during her confinement. In both her pleadings and her testimony at hearing, the petitioner complained that some of those cellmates antagonized her, subjected her to racial slurs and other disparaging remarks, and threatened her with physical harm. She alleged that this has caused her to suffer stress, chest pain and colitis. As noted above, she also alleged that she was attacked and physically injured on February 15, 1996 by her cellmate. That incident was the focal point of much of the evidence and testimony at trial.
The petitioner claimed that she was assaulted by an inmate named Judy Taylor in the cell which they were then sharing at York.
She alleged that Ms. Taylor struck her in the face, causing her to suffer a bloody nose, and cuts between her nostril and upper lip.
The petitioner used the intercom in her cell to contact the guard on duty in her area. She was released from her cell and went to the guard station to report the assault. Lieutenant Dorothy Rucker responded to the area and investigated the alleged assault. Lieutenant Rucker spoke briefly to the petitioner, and then sent her to the infirmary for medical treatment.
The lieutenant then went to the cell where she interviewed Judy Taylor. Ms. Taylor denied striking the petitioner, but admitted that she CT Page 7932 and the petitioner had been arguing. Ms. Taylor claimed that the petitioner had injured herself with a dental retainer. Lieutenant Rucker inspected the cell, which appeared tidy. The lieutenant did not observe blood in the cell, or any other signs of a struggle.
Lieutenant Rucker spoke with two other officers who were on duty in the area. The lieutenant also spoke to other inmates on the tier whose cells were proximate to the petitioner's. None of the inmates questioned by the lieutenant indicated that they had seen or heard the incident.
The petitioner was treated by a nurse at York's medical facility. The medical report was introduced into evidence at heating. (Petitioner's Exhibit 8.) It indicated that the petitioner sustained "two scratches below nose" which were "bleeding slightly". (Petitioner's Exhibit 8.) The wounds, one-half inch and one-eighth inch long, were cleansed and treated with Bacitracin ointment. The report indicates that the petitioner did not appear at sick call on the following day to have her injuries rechecked by the nurse. (Petitioner's Exhibit 8.)
Judy Taylor's record of criminal convictions was entered into evidence at hearing. (Petitioner's Exhibit 21.) She has a number of convictions for escape, larceny, possession and sale of narcotics, and violation of probation. The record does not indicate convictions for assault or other violent crimes.
Lieutenant Rucker testified credibly that she had no prior indication that Judy Taylor was intending to assault the petitioner. She also testified that she received no other information from inmates that Ms. Fuller was in danger of being assaulted by other prisoners.
As a result of her inquiry, Lieutenant Rucker concluded that Ms. Fuller had not been assaulted, but had injured herself.[2] The lieutenant immediately reassigned the petitioner to another cell in order to separate her from Judy Taylor.
Based on the evidence presented at hearing, this court is unable to make a conclusive finding concerning what transpired in the petitioner's cell on February 15, 1996. Given the fact that Judy Taylor admitted arguing with the petitioner, the court does not discount the possibility that the petitioner was involved in a physical altercation with her cellmate which resulted in the minor injuries which she sustained on that date.
At hearing, the petitioner also testified about additional incidents during which other cellmates verbally harassed her and subjected her to belligerent behavior. She claimed that several other inmates, including CT Page 7933 Rita Smith, threatened her with physical harm. The petitioner was not physically injured in any of those incidents.
Ellen Hurlbert, a counselor supervisor at York from 1997 to the present, testified at hearing. She supervises the housing unit where the petitioner resides. She indicated that Ms. Fuller lives in the facility's general population area. The petitioner has not requested protective custody, which is available to prisoners who perceive that they are at risk of physical harm.
Ms. Hurlbert testified that the petitioner has never approached her to complain that she feels in danger of being physically harmed by other inmates. While the court credits that testimony, the pleadings in this case reveal that on January 6, 1998, the petitioner submitted an "inmate request form" complaining about the conduct of her cellmate, Rita Smith. In that form, the petitioner claimed Ms. Smith is "an assaultive danger" and added: "Please get her out of the cell before I am injured or have to injure her." The document does not indicate to which prison official the form was addressed or by whom it was received. The court also finds from the petitioner's testimony and court records that she has also complained in the past to officials at York about the behavior of other inmates with whom she had contact.
As noted above, the only incident in which the petitioner received any physical injury occurred in February, 1996. She does not claim to have been assaulted since then.
 Discussion
Habeas corpus petitions challenging the conditions of correctional confinement are permitted when they allege that the prison conditions violate the constitutional proscription against cruel and unusual punishment. Hutto v. Finney, 437 U.S. 678, 685 (1978); Arey v. Warden,187 Conn. 324 (1982).
The Eighth Amendment's ban on cruel and unusual punishment pertains to prison conditions that "invoke the unnecessary and unwanton infliction of pain," Gregg v. Georgia, 428 U.S. 153, 173 (1976), or that "are grossly disproportionate to the severity of the crime." Cohen v. Georgia,433 U.S. 584, 592 (1977). Correctional officials must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter and medical care. They must also "take reasonable measures to guarantee the safety of inmates." Hudson v. Palmer,468 U.S. 517, 526-527 (1984).
In Rhodes v. Chapman, 452 U.S. 337 (1981), the United States Supreme CT Page 7934 Court held that the diminished living space caused by placing two inmates per cell in an Ohio correctional facility did not amount to cruel and unusual punishment. Noting that prisons which house persons convicted of serious crimes "cannot be free of discomfort," the court concluded that the double ceiling there did not violate the Eighth Amendment:
 "The double ceiling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement." (Internal citations omitted.) Rhodes v. Chapman, supra, pp. 348, 349.
In the present case, there was no evidence offered that the conditions at York have deprived the petitioner of food, medical care or other necessities. Although petitioner alleged that the double celling created bothersome odors and unhealthy conditions in the prison, there was little, if any, evidence offered on that issue at trial. Based on the evidence presented, the court does not find that the petitioner has been subjected to intolerable physical conditions as a result of being required to live with another cellmate. The court finds that the petitioner also failed to prove that her alleged medical problems are related to double celling.
The petitioner has also complained that the practice of double celling results in a loss of her personal privacy. While the court agrees that a loss of privacy is one of the harsh realities of prison life, it does not find that this amounts to the type of cruel and unusual punishment prohibited by the Eighth Amendment.
The petitioner's primary allegation appears to be her contention that the double celling at York exposed her to physical abuse from other inmates, and that prison officials have displayed deliberate indifference to her physical safety. However, the petitioner did not offer statistical evidence or other persuasive proof at hearing which supports a finding that double celling has increased the level of violence at York.
It is certainly true that prison authorities have the duty to protect prisoners from violence inflicted upon them by other inmates. (Internal citations omitted.) Farmer v. Brennan, 511 U.S. 825, 833 (1994).
"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for the victim's safety. Our cases have held that a prison official violates theEighth Amendment only when two requirements are met. First, the deprivations CT Page 7935 alleged must be objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life necessities. For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions imposing a substantial risk of serious harm.
The second requirement follows from the principle that only the unnecessary and unwanton infliction of pain implicates theEighth
Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison condition cases that state of mind is one of deliberate indifference to inmate health and safety." (Internal citations and quotation marks omitted.) Farmer v. Brennan, supra, p. 834.
Based on all of the evidence presented at this hearing, the court finds that the petitioner did not satisfy either of the two criteria delineated in Farmer v. Brennan, supra.
While the petitioner claims to have been subjected to a number of hostile cellmates, she has not sought protective custody.
Following the February 15, 1996 incident, prison officials referred the petitioner for a psychiatric evaluation. The record of that examination indicated concern that the petitioner may have mental illness [and] is being irritating to other [inmates] who might attack [and] assault her." (Petitioner's Exhibit 9.) The psychiatrist who examined Ms. Fuller on February 21, 1996 wrote that: "[Patient] refuses [mental health] personnel aid at this time and does not present [an] imminent danger to self or others." (Petitioner's Exhibit 9.)
In a letter to the petitioner's attorney dated March 8, 1996, Warden Theresa C. Lantz wrote:
 "I have nothing to indicate your client's safety is in jeopardy and I encourage her to please inform staff if she feels that her safety is compromised." (Petitioner's Exhibit 11.)
During the nearly six years that the petitioner has been confined, she has been involved in only one incident where she received minor injuries. Based on all the evidence presented, the court does not find that the petitioner has been incarcerated under conditions exposing her to a substantial risk of serious physical harm.
Additionally, the court finds that petitioner did not prove by a preponderance of the evidence that the defendant was deliberately CT Page 7936 indifferent to her health or safety. Indeed, the evidence about the defendant's response to the February 15, 1996 incident suggests otherwise.
That evidence established that the defendant had no prior indication that Judy Taylor would assault the petitioner, or pose a threat to her personal safety. The petitioner was immediately released from her cell to report the alleged assault. She was then escorted to the prison medical facility, and received appropriate medical treatment of her injuries.
Following the incident, the petitioner was transferred to another cell and separated from her alleged attacker. Although the petitioner has expressed grievances about the defendant's investigation and findings concerning the events of February 15, 1996, the court finds that the defendant took appropriate measures to defuse the situation, reduce the likelihood of future violence between the two inmates, and ensure the petitioner's physical safety.
Ms. Hurlbert testified credibly that York has a protocol for identifying and keeping separate those inmates who are likely to be violent towards each other. The facility's warden assessed the petitioner's situation, determined that she is not at serious risk and invited her to contact staff if she felt she might be in danger. (Petitioner's Exhibit 11.) The petitioner has not been assaulted in the past five years.
The evidence in this case does not prove that the defendant has been deliberately indifferent to the petitioner's health or safety.
The court finds that the petitioner has not proven that the conditions of her confinement violate the Eighth Amendment's ban on cruel and unusual punishment.
Accordingly, the petition for a writ of habeas corpus is herebyDISMISSED.
SO ORDERED.
BY THE COURT:
Dyer, J.