[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner was convicted by jury trial of murder in violation of C.G.S. § 53-54a, assault in the first degree in violation of C.G.S. § 53a-59 (a)(i), and carrying a pistol without a permit in violation of C.G.S. § 29-35. (State v. Carmon, 47 Conn. App. 813).
 "The jury reasonably could have found the following facts. On the night of February 3, 1994, Charlene Troutman was in the living room of her apartment located on Orchard Street in New Haven waiting for a taxicab. With her among others, was her seven-month old granddaughter. Shots fired from the street passed through the living room window, killing the granddaughter and leaving Troutman permanently paralyzed. At the time the shots were fired, Jaime Stanley and Raymond Jones were stopped at a traffic light near Troutman's apartment and saw a man firing into the apartment. As the shooter ran away, both Stanley and Jones saw his face. Both witnesses identified the defendant during trial as the person who had fired the shots through the window of Troutman's apartment."
State v. Carmon, 47 Conn. App. 813, 815 (1998).
The petitioner in this habeas case claims his trial counsel denied him effective assistance of counsel.
At the time of trial the petitioner failed to put on any evidence alleged in the amended petition dated October 30, 2001 other than the claims that he was denied effective assistance of trial counsel, Richard Silverstein (Silverstein) because he did not investigate, disclose and present an alibi defense. (See Amended Petition paragraphs 3b and 3c). CT Page 14124
At the habeas trial, the petitioner testified that he had gone to his girlfriend's house, Christal Batts (Christal) because it was her birthday.
Carmon testified he had a call about a card game that Crystal drove him to at 701 Winchester Avenue 9:30 p.m.. The game started at 10 p.m. Carmon stated that around 9:45 p.m. before the game started Mr. Brown arrived. According to Carmon's version, he left the card game at around 11:25, 11:30 p.m. (Transcript Habeas p. 41). Carmon informed Attorney Silverstein of the name of Brown and when and where he was at the card game after his arrest. After Silverstein represented Carmon, he acknowledged Silverstein spoke to Mr. Brown.
At this habeas hearing, the petitioner stated he objected to a certain venire person to sit as a juror but Silverstein overruled him saying we needed the juror despite his displeasure with the juror. Carmon further testified that he objected to the same jurors selection because she had a close relationship with a police officer since she dated Detective Joe Green's son. Habeas counsel did not brief this issue or present any evidence on that claim at the habeas hearing. The respondent briefed the issue and argues that there is no merit to this claim.
"The individual voir dire was not introduced by the petitioner. There was no showing that the juror had any knowledge about Detective Green in his professional capacity. Detective Joe Green was not a witness at the petitioner's criminal trial. Id. at 59. Cannon then went on to agree that he only expressed his displeasure to Attorney Silverstein, and not to the trial court, and that he "went along with the choice of juror because he felt that Attorney Silverstein was working in his best interest. Id. at 65. Attorney Silverstein recalled that one of the jurors "was going with Joe Green's son, but that Joe Green and his son don't' get along" and that it was not uncommon for minority jurors to know Joe Green because he had been a New Haven officer for 35 years. Id. at 16-17. Attorney Silverstein also testified that he would like a minority juror, but only if the juror answered his questions appropriately. T. 5/10/02 at 3-4. There was no showing that Attorney Silverstein was ineffective in selecting any juror."
Accordingly, petitioner has failed to meet his burden of proof as to paragraph 3(a) of the Amended Petition. (See Post Trial Brief of Respondent at page 20).
During the habeas case, the petitioner was questioned about his claim in his amended petition under 3(i) and 3(j) whether Silverstein informed him that he had a right to take the stand and that he did not take the CT Page 14125 stand because Silverstein told him he "wasn't going to put him on the stand but he really wanted to show — tell my side of the story." (Habeas Transcript p. 49). Under cross-examination his attention was called to the canvass conducted by the trial judge. (Habeas Transcript p. 60). "Then the court says to you, you are aware, sir that that's your decision. Your attorney can advise you as he sees fit and you can follow his advice but you do not have to. I don't know what he advised you, but whatever he advised you, it is your decision and I have to make that clear to you. Correct . . . Then asked Cannon if he wished to testify he answered no." His testimony now is that it was under the discretion of his attorney at the time of trial. The habeas court finds that the petitioner has failed to establish ineffective assistance of counsel to the petitioner's claim under paragraph 3(i) and 3(j).
A claim not included in the Amended petition involved an attempt by habeas counsel to bring the issue of police records before the court. The court rejected such an attempt when objected to by the respondent. The petitioner in his post trial brief raised the question of the police reports for the first time. At the habeas trial it was claimed the issue of the report concerning finger prints and palm prints came from the petitioner Carmon. Trial counsel Silverstein stated he was reasonably certain if the prosecution had turned over the report as exculpatory evidence, he would have investigated it. Further, Silverstein reasonably believed the prosecution had disclosed all exculpatory evidence.
The thrust of this habeas petition was the attack on trial counsel being ineffective because he did not use the alibi defense. The only witnesses produced at trial by the petitioner was Brown and Crystal whose testimony this court has already discussed who at the request of the respondent these two witnesses were sequestered.
The respondent called as a witness Leroy Dease a member of the New Haven detective bureau at the time of the crime. Dease was shown Exhibit D which was the signed statement given to him by the petitioner on February 15, 1994 after Miranda warnings witnessed by Sergeant Sweeney, supervisor in charge of the investigation of the crime. Cannon gave the statement after being picked up on other charges than the murder case, the subject of this petition. In addition to the statement, there was a tape recording (Exh. J).
After the statement, Cannon, the petitioner was charged with the murder of Danielle Taft and shooting of Charlene Troutman.
Dease testified at all times during the statement Cannon was given an opportunity to state where he was on February 3, 1994 and at no point did CT Page 14126 he ever state he was at a card game at 701 Winchester Avenue.
The tape was played to the court and the petitioner. Dease testified the tape was transcribed as the statements which Cannon signed and it was an accurate transcription.
Raymond Jones was shown a photograph array and picked out Carmon as the shooter. Raymond Jones testified at trial as a state's witness. His testimony was before the jury and his credibility was discussed in Cannon's appeal. (See State v. Cannon, 47 Conn. App. 813, 824.)
Silverstein testified that he had a copy of Cannon's statement (Exh. D) supplied by the prosecution and that it played a part in his tactical decision not to pursue an alibi defense because he did not want the statement to come into evidence since Cannon puts himself at the scene at the time of the crime. Silverstein wanted to establish that a third party did the shooting, not the petitioner. (Petition Transcript 5/22/2002 p. 20).
Silverstein was aware of the two witnesses, Jaime Stanley and Raymond Jones that put Cannon at the scene as the shooter. As a tactical reason he wanted to raise a reasonable doubt about the identification of Cannon as the shooter.
Silverstein was appointed as counsel in the trial case after Cannon gave his statement (Exh. D). Silverstein testified that Exhibit D did not come in at trial. Silverstein felt the state would introduce the statement which they failed to do.
The court concludes that the statement (Exh. D) introduced by the respondent has been placed in evidence at this trial to refute the alibi defense now claimed.
Cannon testified that the signature on the statement (Exh. D) was not his and that at the time he was arrested on other charges they kept asking him did he murder the baby. Further he stated that they left out his alibi of playing cards that night. The petitioner finally admitted that the tape was his voice although he asserted that the tape was doctored and pieced together. From all the evidence adduced at trial this court finds that the testimony of Detective Dease is the more credible evidence before the habeas court.
In order to prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) defense counsel's performance was not reasonably competent or within the range of competence expected of CT Page 14127 attorneys with ordinary training and skill in criminal law; Stricklandv. Washington, supra at 466 U.S. 687-688; and (2) but for counsel's substandard performance, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunckley v. Commissioner of Correction, 222 Conn. 444, 445
(1992). The burden of proof is upon the petitioner. Ostolaza v. Warden,26 Conn. App. 758, 760-761, cert. denied, 222 Conn. 906 (1992). He must establish the underlying facts that form the basis of the claimed violations by a fair preponderance of the evidence. Arey v. Warden,187 Conn. 324, 331 (1982); Blue v. Robinson, 173 Conn. 360, 370 (1977).
The case to offer a defense of misidentification as the issue was a tactical decision. The discrepancies in the alibi defense would have diminished its credibility.
Counsel is strongly presumed to render adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Minnifield v. Commissioner of Correction, Conn. App. 71-72 (2001). The petitioner has failed to meet his burden of proof that counsel was ineffective.
Accordingly, the petition is denied. Judgment is entered in favor of the respondent.
___________________ Frank S. Meadow Judge Trial Referee CT Page 14128