[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT OF DISMISSAL
On May 28, 2002, the petitioner filed a petition for a writ of habeas corpus alleging that the conditions of confinement constitute cruel and unusual punishment in violation of both Article First, Section 8 of the Connecticut Constitution and theEighth Amendment to the United States Constitution. More specifically, the petitioner alleges that restraints such as shackles, cuffs and tethers applied during a one-hour recreation period cause pain and prevent him from exercising in a vigorous manner and thus are cruel and unusual punishment. The petitioner seeks a permanent court order against the respondent requiring restraint-free recreation and requests that the order extend to all those similarly situated in the custody of the respondent. The respondent has filed a motion for summary judgment because there are no genuine issues of material fact. For the reasons set forth more fully below, the motion shall be granted and the petition shall be dismissed.
 FINDINGS OF FACT
1. The petitioner was in the custody of the Commissioner of Correction serving a forty-five year sentence at the time he filed the present petition and has remained incarcerated.
2. The petitioner is currently confined in the Administrative Segregation (A.S.) program at Northern Correctional Institution. A.S. is a three-phase program designed for prisoners who have presented significant behavioral problems.
3. All prisoners in Phase I of the A.S. program are required to be in full restraints whenever they exit their cell, to include out-of-cell recreation.
4. Prisoners assigned to Phase I are reviewed for progression to Phase CT Page 2727 II after six months. Phase I prisoners who have not successfully completed Phase I will remain in Phase I. Upon progression to Phase II, prisoners are required to wear only handcuffs upon exiting their cell, for the first thirty days. After that, prisoners are allowed out of their cells to recreate without restraints.
5. The petitioner is taken out of his cell handcuffed behind his back with shackles on his feet and a chain tether going from the shackles to the handcuffs. The petitioner is then placed in a room and given one hour for recreation and exercise. All restraints stay on for the one-hour period. The restraints allow for limited movement and make exercise difficult, if not impossible.
6. The handcuffs do not fit right, cause pain to the petitioner's shoulders and prevent him from exercising in the manner in which he wants to exercise. The petitioner can address the physical problems arising from use of the handcuffs via a medical visit.
 DISCUSSION OF LAW
"A directed verdict may be rendered only where, on the evidence viewedin the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original.) Miller v. United TechnologiesCorp., 233 Conn. 732, 752 (1995). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." United Oil Co. v. Urban Development Commission, 158 Conn. 364,378-79 (1969). "Although the party seeking summary judgment has the burden of showing the nonexistence of material fact, . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such a dispute issue." Maffuci v. Royal ParkLtd. Partnership, 243 Conn. 552, 554 (1998).
"The eighth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment, precludes the imposition of cruel and unusual punishment on an individual convicted of a crime. Cruel and unusual punishment encompasses more than barbarous physical punishment. It also includes punishments which involve the unnecessary and wanton infliction of pain, and those which are grossly disproportionate to the severity of the crime.
"The test for determining whether a given set of conditions of CT Page 2728 confinement violates the eighth amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. These standards are established not by the opinion of experts as to desirable prison conditions, nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. Unquestioned and serious deprivations of basic human needs and deprivation of the minimal civilized measure of life's necessities are obvious cases of eighth amendment violations . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." (Internal citations and quotation marks omitted." Arey v. Warden, 187 Conn. 324, 328-29 (1982).
"The punishment of incarcerated prisoners . . . effectuates prison management and prisoner rehabilitative goals. Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485
(1995).
"A broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction . . .
"The limitation on prisoners' privileges and rights also follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life . . .
". . . Sandin and its counterparts underscore the axiom that a convicted felon's life in prison differs from that of an ordinary citizen. In the context of a legitimate rehabilitation program for prisoners, those same considerations are relevant to our analysis. The compulsion inquiry must consider the significant restraints already inherent in prison life and the State's own vital interests in rehabilitation goals and procedures within the prison system." (Internal citations and quotation marks omitted.) McKune v. Lile, (2002). CT Page 2729
"Cruel and unusual punishment refers to punishment that involves the unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime. In its prohibition of cruel and unusual punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." (Internal citations and quotations omitted.) Santiago v.Commissioner of Correction, 39 Conn. App. 674, 683 (1995).
"In Sanchez v. Warden, 214 Conn. 23 (1990), our Supreme Court concluded that, although a writ of habeas corpus properly might challenge the legality of an inmate's detention, the scope of such a writ was limited to the vindication of an inmate's constitutional rights. In Arey v.Warden, [supra,] that court held that, if a writ seeks to vindicate rights under the eighth amendment to the United States constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." (Internal citations and quotation marks omitted.) Hunnicutt v. Commissioner of Correction, 67 Conn. App. 65,69 (2001).
"Administrative Directive 9.4 defines administrative segregation as `placement of an inmate on a Restrictive Housing Status that results in segregation of the inmate whose behavior, while incarcerated, poses a threat to the security of the facility or a risk to the safety of staff or other inmates, and that the inmate can no longer be safely managed in general population. Once placed in administrative segregation, an inmate's classification status is subject to periodic review." Beasleyv. Commissioner of Correction, 50 Conn. App. 421, 425 (1998), aff'd.,249 Conn. 499 (1999). "Administrative segregation is a level five confinement, which is reserved for inmates who are assessed to have violent tendencies and who pose a safety threat to other inmates and to prison staff. Inmates assigned to administrative segregation are given a handbook providing information on the rules and procedures applicable to their confinement." Beasley v. Commissioner of Correction, supra,50 Conn. App. 423 n. 3. CT Page 2730
In Arey, the Supreme Court noted that "[w]hether or not one hour of outside recreation five days a week is sufficient [to support the conclusion of cruel and unusual punishment], there [wa]s no claim and no evidence to support a claim that the plaintiff's health has been jeopardized or adversely affected by the claimed inadequacy of the recreation activity. Absent such evidence, what may be desirable is not necessarily constitutionally mandated." Arey v. Warden, supra,187 Conn. 330. In the present matter, while the petitioner does claim that he suffers pain from application of the handcuffs and that his ability to exercise freely is inhibited, there is no claim that the petitioner's health has been jeopardized or adversely affected by the use of restraints during the recreational period.
The conditions commensurate with A.S. are restrictive. The A.S. program is, however, designed for prisoners who have presented significant behavioral problems, have violent tendencies and pose a safety threat to other inmates and prison staff. The application of varying degrees of restraint, depending on the A.S. phase level, does not involve the unnecessary and wanton infliction of pain, is not grossly disproportionate to the severity of the crime and is not excessive use of physical force against inmates. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner,supra, 515 U.S. 485.
In fact, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates and prison staff. Santiago v. Commissioner of Correction, supra, 39 Conn. App. 683. Inmates such as the petitioner have demonstrated their danger to the safety of other inmates or the prison staff, and the respondent, were the respondent to not administer programs such as A.S., would likely run afoul of the Eighth Amendment. Tampering by the court with programs such as A.S., which have a clearly defined penological justification and utility, is tantamount to meddling in the minutiae of prison life and the administration of prison facilities.
When the petitioner's claims and evidence are viewed in the light most favorable to the petitioner, no other conclusion can reasonably be reached than that there is no genuine issue of material fact to be tried.
Accordingly, the respondent's motion for summary judgment shallbe granted and the petition for a writ of habeas corpus shall bedismissed.
S.T. Fuger, Jr., Judge CT Page 2731
[EDITORS' NOTE: This page is blank.] CT Page 2732